**Lynwood Anthony VRBA, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 10–00–083–CR.**

Court of Appeals of Texas, Waco.

Jan. 30, 2002.

W.V. Dunnam, Jr., Dunnam & Dunnam, L.L.P., Waco, for appellant.

John W. Segrest, McLennan County Dist. Atty., James Wiley, McLennan, County Asst. Dist. Atty., Waco, appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

A jury convicted Lynwood Anthony Vrba of felony driving while intoxicated. The jury found that Vrba had been previously convicted of two felonies alleged to enhance his punishment to that for an habitual offender and sentenced him to sixty years' imprisonment. Vrba presents twenty-seven issues on appeal. We will reverse.

In general terms, Vrba alleges that the court erred by:

- allowing the State to read its allegations of eight prior DWI convictions to the jury after the parties had initially stipulated that he was the same person convicted in two of them (issues 1–5 and 26–27);

- permitting the State to mention his "confession" of intoxication in opening statements and admitting it in evidence because it was the product of a custodial interrogation and made without the benefit of *Miranda* warnings (issues 6–8);

- overruling his objection to the absence from the charge of an article 38.23 instruction (issues 9–10);

- overruling his objection to the absence from the charge of an instruction on the necessity defense (issue 11);

- overruling his objection and refusing his request for an instruction to disregard the State's attempt to admit the offense report in evidence (issues 12–13); and

- permitting the State to introduce a prior DWI conviction for°an offense committed before September 1, 1994 for which he had received a probated sentence (issues 14–16).

Vrba contends in his remaining issues that:

- the verdict does not support his conviction because the jury was not required to make specific findings on each prior conviction alleged in the indictment (issues 17 and 21–23);

- the charge erroneously refers to other substances besides alcohol as possible intoxicants (issues 18–20); and

- assessing his punishment within the range for an habitual offender constitutes cruel and unusual punishment (issues 24–25).

## BACKGROUND

A Bellmead police officer transporting arrestees to jail observed a red car driving in a manner which led him to believe the driver was intoxicated. He requested assistance via a radio broadcast. Texas Alcoholic Beverage Commission Agent Danny Pavlas responded to his call. According to Pavlas, he observed a red car driving in his direction which matched the description given in the radio broadcast. The car was traveling between twenty and thirty miles per hour though the posted speed limit was fifty-five. Pavlas saw the Bellmead officer following the red car.

As Pavlas approached, the red car drifted across the centerline of the highway. Pavlas moved to the right shoulder to avoid a collision then turned around to follow. He confirmed with the Bellmead officer that this was the suspect vehicle. As he followed both cars, he observed the red car again drift into the oncoming lane and then back across to the shoulder. Pavlas directed the Bellmead officer to activate his overhead lights and stop the car. After the red car pulled over, the Bellmead officer continued on to jail.

As Pavlas approached the driver's-side door, he noticed that Vrba was in the driver's seat and Sherry Reece was in the front passenger's seat. He smelled "a strong odor of alcohol coming from the vehicle." He asked Vrba to step to the rear of the car. Vrba held his car for support as he walked to the rear. He leaned against the back of the car once there. Pavlas noticed that Vrba "had a strong odor of alcohol coming from his breath," bloodshot eyes, and slurred speech. Pavlas asked Vrba whether he had been drinking. Vrba responded, "Yes, lots." Pavlas then asked Vrba to perform some field sobriety tests, which he refused. Vrba told him, "I am drunk. I don't need

a test to tell you I am drunk. I am drunk. This ain't my first rodeo."

Vrba disputed much of Pavlas's testimony. He testified that Reece called him at home and asked him to join her at a local bar to "have a beer." Vrba went to the bar and "drank a beer and a half." At that point, they decided to go to Vrba's house. Reece drove as they left the bar. Because Vrba complained about the manner in which she was driving, she pulled over and allowed him to drive. Vrba testified that he "had not driven a hundred yards" before he was stopped. He explained that he had not had sufficient time to reach the posted speed limit before the stop. He insisted that he drove appropriately and never crossed into the oncoming lane of traffic.

## PROCEDURAL BACKGROUND

The indictment as amended alleges that Vrba was intoxicated "by reason of the introduction of alcohol, a controlled substance, a drug, or a dangerous drug into his body." The indictment alleges eight prior DWI convictions from 1968 to 1995 to elevate the offense to a third degree felony. The indictment alleges two non-DWI felonies to enhance his punishment to that for an habitual offender.

Under the authority of the Court of Criminal Appeals decision in *Tamez v. State*, Vrba sought to stipulate to two of the prior DWI convictions alleged to prevent the State from reading all eight allegations to the jury or admitting evidence of them during the guilt-innocence phase. 11 S.W.3d 198, 202–03 (Tex.Crim.App. 2000). When the State read the allegations of the indictment to the jury at the beginning of the guilt-innocence phase, it read only the two prior DWI allegations to which Vrba had offered to stipulate. A dispute arose during trial about the terms of the stipulation. The court then allowed

the State to read all eight allegations to the jury and offer evidence of the prior convictions over Vrba's objection.

At the conclusion of the guilt-innocence phase, Vrba asked the court to submit an instruction to the jury under article 38.23 of the Code of Criminal Procedure because of the conflicts between Vrba's testimony and the evidence offered by the State regarding the basis for the stop. The court denied this request.

The jury found Vrba guilty as charged. At punishment, the jury found both enhancement allegations true and sentenced him to sixty years' imprisonment.

### ARTICLE [1] 38.23 INSTRUCTION

■ Vrba's ninth and tenth issues challenge the court's failure to submit an article 38.23 instruction in the charge. The State responds that Vrba's "self-serving testimony" did not present a factual dispute sufficient to require submission of such an instruction.

Specifically, Vrba contends in his ninth issue that the court erred by failing to submit an instruction in the application paragraph of the charge which directed the jury to acquit him if it found that Pavlas did not have a legally permissible basis for the stop. He argues in his tenth issue that the court erred by failing to submit an instruction to the jury that it not consider any evidence seized as a result of the stop if it found that Pavlas did not have a legally permissible basis for the stop.

Article 38.23(a) provides as follows:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2002).

The Court of Criminal Appeals has construed article 38.23(a) to mean that, "when conflicting evidence raises an issue regarding the right to stop a driver, a court is statutorily bound to include a requested charge on this issue." *Reynolds v. State,* 848 S.W.2d 148, 149 (Tex.Crim.App.1993); *accord Gerron v. State,* 57 S.W.3d 568, 572 (Tex.App.—Waco 2001, pet. filed); *Stoutner v. State,* 36 S.W.3d 716, 720 (Tex.App.–Houston [1st Dist.] 2001, pet. ref'd); *see also Pierce v. State,* 32 S.W.3d 247, 251 (Tex.Crim.App.2000) (article 38.23 instruction required "only if there is a contested issue of fact").

■ In many cases in which an article 38.23 instruction is required, a trial court may instruct the jury to not consider any evidence which was obtained as a result of the contested search or seizure if the jury finds that the facts do not provide a valid basis for the search or seizure. *See, e.g., Coleman v. State,* 45 S.W.3d 175, 181 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) ("Therefore, if you believe beyond a reasonable doubt that the peace officer lawfully obtained the evidence, you may consider it. If you have a reasonable doubt that the peace officer lawfully obtained the evi-

---

**1.** Hereinafter, the term "article" refers to an article of the Code of Criminal Procedure

unless otherwise indicated.

dence, you may not consider it."). Even assuming an affirmative finding however, an acquittal will not necessarily follow if the State has other evidence of guilt obtained apart from the illegal search or seizure. *See, e.g., Oliver v. State,* 10 S.W.3d 411, 416 (Tex.App.—Waco 2000, no pet.).

■ Conversely, when as in Vrba's case the entirety of the State's case rests on the validity of a traffic stop, the trial court may properly instruct the jury that it must enter a verdict of acquittal if it finds that the facts do not provide a valid basis for the search or seizure. *See, e.g., Reynolds v. State,* 967 S.W.2d 493, 495 (Tex.App.—Houston [1st Dist.] 1998), *aff'd,* 4 S.W.3d 13 (Tex.Crim.App.1999) ("since you will have no further evidence to consider, you shall return a verdicr [sic] of 'Not Guilty.' ").

■ Pavlas offered two justifications for Vrba's stop: (1) his driving slowly; and (2) his crossing into the oncoming lane of traffic. Vrba's testimony clearly raises a factual dispute regarding the latter of these justifications. However, Vrba does not dispute that he was driving slowly. Nevertheless, Vrba's testimony that he had just pulled onto the road is inconsistent with Pavlas's testimony that the Bellmead officer had been following Vrba and made a request for assistance over the radio.[2] As Pavlas explained on cross-examination, he was "a mile or so" away from the site of the stop when he heard the radio broadcast. He then drove in that direction. After passing Vrba and the Bellmead officer, he turned around and pulled in behind them. He then instructed the Bellmead officer to activate his overhead lights and effect the stop. Vrba's testimony that he

"had not driven a hundred yards" before he was stopped is clearly factually inconsistent with Pavlas's testimony.

For these reasons, we conclude that Vrba's testimony raised a fact issue concerning Pavlas's stated bases for the stop. *Cf. Reynosa v. State,* 996 S.W.2d 238, 240 (Tex.App.—Houston [1st Dist.] 1999, no pet.) (no instruction required where defendant disputes only one of several stated bases for stop). Therefore, the court was "statutorily bound" to submit an article 38.23 instruction to the jury. *See Reynolds,* 848 S.W.2d at 149; *Gerron,* 57 S.W.3d at 572; *Stoutner,* 36 S.W.3d at 720.

■ Vrba objected to the omission from the court's charge of an article 38.23 instruction. Accordingly, this error requires reversal if Vrba suffered "some harm" from the omission. *See Gerron v. State,* 57 S.W.3d at 572; *Atkinson v. State,* 934 S.W.2d 896, 897 (Tex.App.—Fort Worth 1996, no pet.); *see also Atkinson v. State,* 923 S.W.2d 21, 27 (Tex.Crim.App.1996) (article 36.19 harm standard applies in cases where article 38.23 instruction erroneously omitted); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g) (construing article 36.19).

The record contains no evidence of Vrba's guilt independent of that obtained as a result of the stop. Accordingly, we conclude that he suffered "some harm" as a result of the omission of an article 38.23 instruction from the charge. *See Gerron,* 57 S.W.3d at 572. Therefore, we sustain his ninth and tenth issues.

Although this error requires reversal, we address a number of Vrba's other issues because they present issues likely to occur on retrial. *See Cook v. State,* 940 S.W.2d 623, 627–28 (Tex.Crim.App.1996);

---

**2.** We also note that the act of driving slowly, standing alone, does not justify a stop based on reasonable suspicion. *See, e.g., Richard-*

*son v. State,* 39 S.W.3d 634, 640 (Tex.App.—Amarillo 2000, no pet.).

*Jordan v. State,* 1 S.W.3d 153, 158 (Tex. App.—Waco 1999, pet. ref'd).

## PRIOR DWI CONVICTIONS

Vrba's first through fifth issues, his fourteenth through sixteenth issues, and his twenty-sixth through twenty-seventh issues all touch on the State's allegation and proof of his eight prior DWI convictions during the guilt-innocence phase.

### STIPULATION

Vrba avers in his first through fifth issues that the court erred by allowing the State to introduce and prove all eight prior DWI convictions even though he had offered to stipulate to any two of them. Vrba's fourteenth through sixteenth issues claim that a 1995 DWI conviction relied upon by the State could not be used to elevate the present offense to a felony because he received community supervision for the offense.

In *Tamez,* the Court of Criminal Appeals held that, when a defendant charged with felony DWI agrees to stipulate to the jurisdictionally-required two prior DWI convictions, the State may read only that portion of the indictment which alleges these stipulated prior DWI convictions and may not present evidence of these convictions during the guilt-innocence phase. *See Tamez,* 11 S.W.3d at 202; *see also Smith v. State,* 65 S.W.3d 332, 337–38 (Tex.App.—Waco 2001, no pet. h.); *Baker v. State,* 52 S.W.3d 882, 885 (Tex.App.— Fort Worth 2001, no pet. h.); *Orona v. State,* 52 S.W.3d 242, 247 (Tex.App.—El Paso 2001, no pet. h.); *Robles v. State,* 20 S.W.3d 162, 163 (Tex.App.—Houston [14th Dist.] 2000, pet. granted).

The heart of Vrba's first five issues rests on whether the parties reached a sufficient stipulation under *Tamez.* Before voir dire, the parties made the following stipulation on the record:

Your Honor, the stipulation is that the defendant here today is the one and the same person as the Lynwood Anthony Vrba who on the 27th day of October, 1986, in the Criminal District Court No. 3 of Dallas County, Texas, in Cause Number F8676874UJ was convicted of the offense of driving while intoxicated, committed on August 10th, 1986; and again, this defendant is one and the same as the Lynwood Anthony Vrba who was convicted on the 13th day of January, 1995, in the County Court at Law of McLennan County, Texas in Cause No. 94–0635–CR1 of the offense of driving while intoxicated, committed on or about December 16, 1993.

After the jury was impaneled and sworn, the State read the indictment, including only the two prior convictions to which the parties had stipulated before voir dire. Vrba entered a plea of "not guilty."

After the State's first two witnesses testified, the State attempted to dictate the parties' stipulation into the record before the jury. The prosecutor stated the stipulation as follows:

That prior to the commission of the aforesaid offense being September 20th, 1998, the one and the same defendant, Lynwood Anthony Vrba, was convicted on October 27th as indicated by State's Exhibit 2 in the Criminal District Court Number 3 of Dallas County, Texas in Cause Number F8676874UJ, was convicted of the offense of driving while intoxicated, and the date of the offense was August 10th of 1986.

And prior to the commission of the offense in question of September 20th, 1998, this one and the same Lynwood Anthony Vrba on the 13th day of January, 1995, as indicated by State's Exhibit Number 1, in the County Court at Law in McLennan County, Texas in Cause

Number 94–0635–CR–1, Mr. Vrba was convicted of the offense of driving while intoxicated.

And the same convictions as displayed in State's 1 and 2, conviction became final prior to the commission of the offense of September 20th of 1998. And we would offer State's Exhibit 1 and 2, certified public documents.

Vrba objected that the parties had not stipulated to the finality of these convictions. The court then excused the jury from the courtroom and conducted an extensive hearing outside the presence of the jury in which the parties argued about whether a prior DWI conviction in which the defendant received probation or community supervision is a "final conviction."

After hearing argument of counsel, the court allowed the State over Vrba's objection to re-read the indictment to the jury, including all eight prior DWI convictions alleged to elevate the present offense to a third-degree felony.

Ordinarily, a prior conviction is not "final" for enhancement purposes if the defendant received probation or community supervision which was never revoked. *See Jordan v. State,* 36 S.W.3d 871, 875 (Tex. Crim.App.2001). However, the DWI statute defines a "final conviction" differently. The version of section 49.09(b) of the Penal Code applicable to Vrba's case provides in pertinent part that a defendant commits felony DWI if he commits DWI and "has previously been convicted two times of an offense relating to the operating of a motor vehicle while intoxicated." Act of April 25, 1995, 74th Leg., R.S., ch. 76, § 14.56, 1995 Tex. Gen. Laws 458, 841 (amended 1999) (current version at TEX. PEN.CODE ANN. § 49.09(b) (Vernon Supp.2002)). Sec-

tion 49.09(c)(1)(C) further provides that an "[o]ffense relating to the operating of a motor vehicle while intoxicated" includes among other offenses "an offense under Article 6701*l*–1, Revised Statutes, as that law existed before September 1, 1994." TEX. PEN.CODE ANN. § 49.09(c)(1)(C) (Vernon Supp.2002). The former article 6701*l*–1(h) provided, "For the purposes of this article, a conviction for an offense that occurs on or after January 1, 1984, is a final conviction, whether or not the sentence for the conviction is probated." Act of May 27, 1983, 68th Leg., R.S., ch. 303, § 3, 1983 Tex. Gen. Laws 1568, 1576, *repealed by* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.15, 1993 Tex. Gen. Laws 3586, 3704.

The Court of Criminal Appeals has construed these statutory provisions to mean "that a probated DWI conviction which occurred after January 1, 1984, but prior to September 1, 1994, may properly be used" to elevate a DWI to a Class A misdemeanor or a third-degree felony under section 49.09. *Ex parte Serrato,* 3 S.W.3d 41, 43 (Tex.Crim.App.1999); *accord Williamson v. State,* 46 S.W.3d 463, 466–67 (Tex.App.—Dallas 2001, no pet.).

■ The Court of Criminal Appeals held in *Tamez* that "a defendant's stipulation to a previous conviction should suffice when it carries the same evidentiary value as the judgments of prior convictions." *Tamez,* 11 S.W.3d at 202. The judgment for the 1986 Dallas County felony DWI conviction to which the parties tried to stipulate reflects that Vrba was sentenced to two years' imprisonment. Clearly,[3] this constitutes a "final conviction." *See Maye v. State,* 966 S.W.2d 140, 143 (Tex.App.—

**3.** This judgment satisfied the State's burden to make a prima facie showing of finality. *See Jones v. State,* 711 S.W.2d 634, 635 (Tex. Crim.App.1986); *Espinoza v. State,* 843

S.W.2d 729, 731–32 (Tex.App.—Austin 1992, pet. ref'd). Vrba offered no evidence to rebut this prima facie showing. *Id.*

Houston [14th Dist.] 1998, no pet.). The judgment for the 1995 McLennan County misdemeanor DWI conviction to which the parties tried to stipulate reflects that imposition of Vrba's sentence was suspended and he was placed on community supervision for two years. Under section 49.09, this too was a "final conviction" for purposes of a subsequent DWI prosecution. *See Serrato*, 3 S.W.3d at 43; *Williamson*, 46 S.W.3d at 466–67.

■■■ Although the judgments would establish that these were "final convictions," the stipulation which Vrba sought would not. The holdings in *Serrato* and *Williamson* and the plain language of section 49.09(d) clearly indicate that a prior DWI conviction must be a "final conviction" before it can be used to elevate a subsequent DWI to a Class A misdemeanor or third-degree felony.[4] *See* TEX. PEN. CODE ANN. § 49.09(d) (Vernon Supp.2002); *Serrato*, 3 S.W.3d at 43; *Williamson*, 46 S.W.3d at 466–67. Thus, Vrba's refusal to stipulate to the finality of these convictions rendered the attempted stipulation insufficient because it did not "carr[y] the same evidentiary value as the judgments of prior convictions." *See Tamez*, 11 S.W.3d at 202. Accordingly, the State properly refused to accept Vrba's stipulation. For these reasons, we conclude that Vrba's first five issues are without merit. Because we have determined that Vrba's 1995 DWI conviction was a "final conviction" for purposes of a subsequent DWI prosecution, his fourteenth through sixteenth issues are without merit.

### DOUBLE JEOPARDY

■■■ Vrba claims in his twenty-sixth and twenty-seventh issues that he was twice placed in jeopardy when the court permitted the State to re-read the indictment during the course of the guilt-innocence phase to include all eight prior convictions after he had already entered a "not guilty" plea to the State's initial reading of the indictment with only two prior convictions.

■■■ "Before a defendant can be 'twice put in jeopardy,' as contemplated by the Fifth Amendment, the original jeopardy must have terminated. 'Absent a final judgment, [a defendant] remains under the initial jeopardy.'" *Ramirez v. State*, 36 S.W.3d 660, 666 (Tex.App.—Waco 2001, pet. ref'd) (quoting *Hanley v. State*, 909 S.W.2d 117, 120 (Tex.App.—Houston [14th Dist.] 1995, no pet.)).[5] *Ramirez, Hanley* and the central authority on which they relied, *Ex parte McAfee*, all involved the state and federal double jeopardy prohibitions, even though the quotation references only the Fifth Amendment. *See Ex parte McAfee*, 761 S.W.2d 771, 772–73 (Tex.Crim.App.1988); *Ramirez*, 36 S.W.3d at 662; *Hanley*, 909 S.W.2d at 119–20. Because the "initial jeopardy" never terminated, the State's re-reading of the indictment with the previously-omitted allegations regarding prior DWI convictions did not violate the state and federal constitutional prohibitions against double jeopardy.[6] *See Ramirez*, 36 S.W.3d at 666–67;

---

4. For example, a prior DWI conviction would not be "final" if an appeal were still pending from that conviction. *See Jordan v. State*, 36 S.W.3d 871, 875 (Tex.Crim.App.2001). Thus, such a conviction could not be used to elevate a subsequent DWI to a Class A misdemeanor or third-degree felony.

5. The internal quotations apparently originate with *Ex parte McAfee*. 761 S.W.2d 771, 772–

73 (Tex.Crim.App.1988); *see also Ex parte Queen*, 877 S.W.2d 752, 754 (Tex.Crim.App. 1994).

6. "Under both the State and Federal Constitutions, jeopardy attaches in a jury trial when the jury is empaneled and sworn." *Ex parte Ward*, 964 S.W.2d 617, 631 n. 18 (Tex.Crim. App.1998) (citing *Crist v. Bretz*, 437 U.S. 28,

*Hanley,* 909 S.W.2d at 119–20; *cf. McClay v. State,* 946 S.W.2d 170, 173 (Tex.App.—Amarillo 1997, pet. ref'd) (jeopardy will bar the State's attempt to "re-enhance" a defendant in a subsequent proceeding when evidence of the original enhancement allegations has been found legally insufficient or the allegations were void). Accordingly, we conclude that Vrba's twenty-sixth and twenty-seventh issues are without merit.

### THE "CONFESSION"

■■ Vrba's sixth through eighth issues argue that the court erred by permitting the State to mention his "confession" of intoxication during opening statements and introduce evidence of the "confession" during the guilt-innocence phase because he made the statement at issue in response to custodial interrogation and without the benefit of *Miranda* warnings.

In sum, the officers stopped Vrba's car because they suspected him of driving while intoxicated. During the course of the investigation, Pavlas asked Vrba whether he had been drinking. Vrba responded, "Yes, lots." Pavlas then asked Vrba to perform some field sobriety tests, which he refused. Vrba told him, "I am drunk. I don't need a test to tell you I am drunk. I am drunk. This ain't my first rodeo." Pavlas testified that he did not intend to allow Vrba to leave the scene until he had concluded his investigation. Vrba testified that he did not feel free to leave.

Vrba contends that, because he had become the focus of Pavlas's investigation and because he was not free to leave, the encounter had escalated from a temporary investigative detention to a "custodial restraint" to which the protections mandated by *Miranda* and article 38.22 apply. *See* 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24, 33

*Miranda v. Arizona,* 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–07 (1966); Tex.Code Crim. Proc. Ann. art. 38.22, § 2 (Vernon 1979), § 3(a)(2) (Vernon Supp.2002).

The United States Supreme Court has concluded that a person is not in "custody" for *Miranda* purposes when he has been stopped for a traffic violation and asked to perform a field sobriety test. *See Berkemer v. McCarty,* 468 U.S. 420, 441–42, 104 S.Ct. 3138, 3151–52, 82 L.Ed.2d 317, 336 (1984). Texas courts have applied *Berkemer* in similar settings. *See State v. Stevenson,* 958 S.W.2d 824, 828–29 (Tex. Crim.App.1997) (defendant's statement that he was driver of car involved in accident not made as result of custodial interrogation notwithstanding fact that focus of investigation had shifted to him); *State v. Waldrop,* 7 S.W.3d 836, 838–40 (Tex. App.—Austin 1999, no pet.) (defendant's statements that he had been drinking and "knew he was drunk" made in response to officer's question whether he had been drinking not made in response to interrogation nor while in custody); *Crivello v. State,* 4 S.W.3d 792, 803–04 (Tex.App.—Texarkana 1999, no pet.) (defendant's statements that he had been drinking made in response to officer's question whether he had been drinking not made as a result of custodial interrogation); *Hutto v. State,* 977 S.W.2d 855, 857–58 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (defendant's statement that he had four beers not made in response to custodial interrogation).

■■ Following these authorities, we conclude that Vrba was not in custody for *Miranda* purposes when Pavlas asked him if he had been drinking and asked him to perform field sobriety tests. *See Berkemer,* 468 U.S. at 441–42, 104 S.Ct. at 3151– (1978)).

52, 82 L.Ed.2d at 336; *Stevenson,* 958 S.W.2d at 829; *Waldrop,* 7 S.W.3d at 839–40; *Crivello,* 4 S.W.3d at 804; *Hutto,* 977 S.W.2d at 858 Because he was not in custody, no *Miranda* or article 38.22 [7] warnings were required. *Id.* Therefore, Vrba's sixth through eighth issues are without merit.

## NECESSITY DEFENSE

Vrba contends in his eleventh issue that the court erred by overruling his request that an instruction on the necessity defense be included in the jury charge. To raise the necessity defense, a defendant must admit that he committed the offense charged then offer the alleged necessity as a justification for his conduct. *See Young v. State,* 991 S.W.2d 835, 839 (Tex.Crim. App.1999); *Jackson v. State,* 50 S.W.3d 579, 594 (Tex.App.—Fort Worth 2001, pet. ref'd); *Shugart v. State,* 32 S.W.3d 355, 364–65 (Tex.App.—Waco 2000, pet. ref'd). Vrba testified that he was not intoxicated. Because he denied his guilt, he was not entitled to an instruction on the necessity defense. *Id.* Accordingly, his eleventh issue is without merit.

## CRUEL AND UNUSUAL PUNISHMENT

Vrba's twenty-fourth and twenty-fifth issues aver that the imposition of a sentence within the habitual offender range for the offense of driving while intoxicated runs afoul of the Eighth Amendment's prohibition against cruel and unusual punishment.

When we review such a claim, we "initially make a threshold comparison of the gravity of [the appellant's] offense[ ]

against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then consider [other] factors" which bear on the claim. *Dunn v. State,* 997 S.W.2d 885, 892 (Tex.App.—Waco 1999, pet. ref'd) (quoting *McGruder v. Puckett,* 954 F.2d 313, 316 (5th Cir.1992)); *accord Hicks v. State,* 15 S.W.3d 626, 632 (Tex.App.—Houston [14th Dist.] 2000, pet. ref'd).

The State need not treat an accused who has been charged under a recidivist statute in the same manner as one who is charged as a first-time offender. *See Rummel v. Estelle,* 445 U.S. 263, 284, 100 S.Ct. 1133, 1144, 63 L.Ed.2d 382, 397 (1980); *Hicks,* 15 S.W.3d at 632; *Smallwood v. State,* 827 S.W.2d 34, 38 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd); *accord McGruder,* 954 F.2d at 316–17. A repeat offender's sentence is "based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes." *Hicks,* 15 S.W.3d at 632 (quoting *Rummel,* 445 U.S. at 284, 100 S.Ct. at 1145, 63 L.Ed.2d at 397). Therefore, in considering whether Vrba's sentence is "grossly disproportionate," we consider not only the present offense but also his criminal history. *See Rummel,* 445 U.S. at 284–85, 100 S.Ct. at 1144–45, 63 L.Ed.2d at 397–98; *McGruder,* 954 F.2d at 316–17; *Hicks,* 15 S.W.3d at 632–33; *Smallwood,* 827 S.W.2d at 38.

The record reflects that Vrba has eight prior DWI convictions, two of them felonies. He also has two prior felony convictions for unlawfully carrying a weapon on a licensed premise and one prior felony

7. "Article 38.22 of the Code of Criminal Procedure codifies both *Miranda*'s system of protecting a suspect against self-incrimination and its distinction between voluntary statements and compelled confessions." *State v.* *Waldrop,* 7 S.W.3d 836, 838 (Tex.App.—Austin 1999, no pet.); *accord Jones v. State,* 944 S.W.2d 642, 650 n. 11 (Tex.Crim.App.1996); *Jeffley v. State,* 38 S.W.3d 847, 858 n. 6 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

conviction for murder without malice. Given Vrba's prior record and his persistence in driving while intoxicated despite his repeated incarcerations, we cannot say that his sentence is "grossly disproportionate." *See McGruder*, 954 F.2d at 316–17; *Hicks*, 15 S.W.3d at 632–33. Accordingly, his twenty-fourth and twenty-fifth issues are without merit.

## CONCLUSION

We have determined that the court's failure to submit an article 38.23 instruction in the jury charge requires a reversal of Vrba's conviction. We have addressed other issues likely to arise on a retrial of this cause. We need not address the remaining issues. Accordingly, we reverse the judgment and remand this cause for further proceedings consistent with this opinion.