In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00114-CV


______________________________






IN THE MATTER OF J.L.D., A JUVENILE





 


On Appeal from the County Court at Law sitting as Juvenile Court


Lamar County, Texas


Trial Court No. 20-CJV-00




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Cornelius



O P I N I O N



 J.L.D., a juvenile, (1) brings this appeal alleging that the juvenile court erred and violated her
constitutional rights during her delinquency proceedings by revoking her community supervision and
committing her to the Texas Youth Commission ("TYC") on the basis of an assault that the State had
previously used to extend her probation.

 Before a juvenile court may find that a minor has engaged in delinquent conduct, it must
conduct an adjudication hearing. See Tex. Fam. Code Ann. § 54.03 (Vernon Supp. 2002). If the
court makes an affirmative finding that the juvenile has engaged in delinquent conduct, it must hold
a separate disposition hearing for sentencing. See Tex. Fam. Code Ann. § 54.04 (Vernon Supp.
2002). On June 29, 2000, the juvenile court held J.L.D.'s adjudication hearing and found that she
engaged in delinquent conduct by committing an aggravated assault resulting in serious bodily injury
to the victim. At J.L.D.'s disposition hearing, the court committed her to the TYC for an
indeterminate period of time. Commitment to the TYC is statutorily permissible where a child has
committed a felony offense. See Tex. Fam. Code Ann. § 54.04(d)(2). J.L.D. filed a motion for new
trial. The court granted the motion, vacated the commitment order, and placed J.L.D. on community
supervision for twelve months.

 During this twelve-month period, J.L.D. assaulted another person. We refer to this assault
as the "second assault." Based on the nonaggravated second assault, the State petitioned the court
to modify the disposition, alleging that J.L.D. violated her condition of supervision that she must not
violate any state law. The court held the requisite hearing to modify disposition. See Tex. Fam.
Code Ann. § 54.05 (Vernon Supp. 2002). Pursuant to a plea bargaining agreement, J.L.D. signed
a stipulation of evidence admitting that she violated her community supervision by committing the
second assault, and the court modified the prior disposition by extending J.L.D.'s supervisory period
for five months and placing her in the custody of her grandmother. 

 Shortly thereafter, the State again petitioned the court to modify disposition. The State
alleged in count one, that J.L.D. committed the nonaggravated second assault mentioned above and,
in count two that J.L.D. intentionally fled from her probation officer, who was lawfully attempting
to arrest her. J.L.D. objected to count one on the bases of due process and former jeopardy. The trial
court overruled her objection and ultimately ordered that J.L.D. be committed to the TYC for an
indefinite period of time not to exceed the time at which she becomes twenty-one years of age.

 J.L.D. contends her due process rights were violated because the second assault was used
against her in two separate probation modification proceedings, the first to extend her supervision
by five months and the second to revoke community supervision altogether. The State presents no
argument on this issue. The State argues instead that count two, which alleges that J.L.D. fled from
her probation officer, was a sufficient basis itself to revoke her supervision, and therefore, the trial
court did not abuse its discretion. 

 We first consider whether J.L.D. has preserved her complaints for appellate review. To
preserve a complaint for appellate review, a party must timely present to the trial court an objection
or motion stating the specific grounds for the desired ruling, if the specific grounds are not apparent
from the context. Tex. R. App. P. 33.1(a)(1). Within the context of revocation hearings, where the
issue is the preservation of due process complaints, a due process objection must have been raised
before the trial court to preserve it for appellate review, even where the defendant has a manifestly
meritorious claim. See Rogers v. State, 640 S.W.2d 248, 265 (Tex. Crim. App. 1982) (Opinion on
State's Second Motion for Rehearing); Hise v. State, 640 S.W.2d 271, 273 (Tex. Crim. App. 1982)
(Opinion on State's Motion for Rehearing); Wright v. State, 640 S.W.2d 265, 269 (Tex. Crim.  App.
 1982)  (Opinion  on  State's  Motion  for  Rehearing).  Although  J.L.D.  focused  on a double
jeopardy objection at the revocation hearing, she also raised her right to due process. Her counsel
stated, "We would allege that it has previously been disposed of and that hearing Count One
[alleging the second assault] again here today is a violation of her due process right. It violates not
only the United States Constitution but the Texas Constitution. It's res judicata, double jeopardy." 
We find this to be sufficient to preserve both a due process and a double jeopardy objection for
appellate review. Both the court and the State were on notice of the due process objection.

 Two counts formed the basis for the petition to revoke J.L.D.'s community supervision. 
However, it is clear from both the trial court's oral pronouncement of sentence and its written
judgment that the trial court based its decision to revoke community supervision on only one of the
counts, namely the second assault. The court specifically found in its oral pronouncement that the
evidence was factually insufficient to support count two, which alleged that J.L.D. intentionally fled
from her probation officer. Immediately following this oral finding, the court recited two more
findings, that J.L.D. was previously found to have engaged in delinquent conduct (the first assault)
because of which she was placed on community supervision for twelve months, and that on January
30, 2001, she violated her supervision terms by committing the second assault as alleged in count
one of the State's petition. The court repeated these two additional findings in its written order,
although it made no reference in this written order to the allegation that J.L.D. had fled from her
probation officer. A trial court's pronouncement of sentence is oral, while the judgment, including
the sentence assessed, is merely the written declaration and embodiment of that oral pronouncement. 
Tex. Code Crim. Proc. Ann. art. 42.01, § 1 (Vernon Supp. 2002); see Ex parte Madding, No.
74,082, slip op. at 3, Tex. Crim. App. LEXIS 44 at *8 (Tex. Crim. App. March 6, 2002, no pet. h.);
Banks v. State, 708 S.W.2d 460, 461-62 (Tex. Crim. App. 1986) (reforming insufficient written
judgment to accurately reflect cumulation order orally pronounced at sentencing). Thus, it is
necessary to read the transcript of the trial court's oral pronouncement of sentence in order to
properly understand the court's true ruling. The State's argument that count two is a sufficient basis
to uphold the judgment is without merit because it is inconsistent with the court's actual finding
against count two.

 We next consider J.L.D.'s due process complaint. The Texas Court of Criminal Appeals has
stated that when on community supervision, a probationer's liberty, "although indeterminate, includes
many of the core values of unqualified liberty, such as freedom to be with family and friends,
freedom to form other enduring attachments of normal life, freedom to be gainfully employed, and
freedom to function as a responsible and self-reliant person." Rogers v. State, 640 S.W.2d at 251-52. 
Consequently, "[i]t would be the epitome of arbitrariness for a court first to conduct a hearing on
alleged violations and exercise its discretion to return the probationer to probation (whether by a
'continuance of the hearing' or by a 'continuance of the probation'), and then decide several months
later to exercise its discretion in the opposite fashion by revoking the probation without any
determination of a new violation." Id. at 252. 

 Thus, where a trial court holds a hearing on a motion to revoke or modify community
supervision and disposes of that motion by allowing a person to remain on supervision with modified
conditions, the court is thereafter without authority to change that disposition at a subsequent hearing
where no further violation of supervision is shown. Ex parte Tarver, 725 S.W.2d 195, 199-200
(Tex. Crim. App. 1986); Furrh v. State, 582 S.W.2d 824, 827 (Tex. Crim. App. 1979). To do so
violates a probationer's liberty interest as safeguarded by federal constitutional due process
protection (2) and state constitutional due course of law protection. (3) See Rogers v. State, 640 S.W.2d
at 252; Hise v. State, 640 S.W.2d at 272; Wright v. State, 640 S.W.2d at 269. The cases just cited
all concern adult criminal proceedings. Juvenile delinquency procedures are civil in nature. See In
re J.R.R., 696 S.W.2d 382, 383 (Tex. 1985). Nevertheless, there are certain constitutional
protections to which a juvenile is entitled as in a criminal trial, because juvenile proceedings may
also result in deprivations of liberty. These include due process protections. See id. at 384 ("A
juvenile is entitled to due process and is thus given double jeopardy protection."). There is no reason
why the constitutional protections afforded adults against deprivations of liberty at community
supervision revocation proceedings should not be available for juveniles. We therefore hold that
they apply equally in circumstances such as these, where one act is twice used to modify or revoke
community supervision. 
 J.L.D. characterizes her complaint in terms of double jeopardy rather than due process. A
double jeopardy objection is a type of due process objection, which is why it is through the
Fourteenth Amendment Due Process Clause that the Fifth Amendment Double Jeopardy provision
is applied against the states. See Brown v. Ohio, 432 U.S. 161, 164, 97 S.Ct. 2221, 53 L.Ed.2d 187
(1977). Despite the mischaracterization, the substance of J.L.D.'s argument on appeal is that the
Court violated her right to due process by twice using one act to modify her community supervision. 
We conclude that the juvenile court violated J.L.D.'s due process liberty rights when it modified a
previous disposition, revoking her community supervision without a showing of a further violation. (4) 
 We reverse the judgment and remand the proceeding to the juvenile court for further
proceedings consistent with this opinion.


 William J. Cornelius

 Chief Justice


Date Submitted: April 4, 2002

Date Decided: April 18, 2002


Publish.
1. J.L.D. was born on February 27, 1984. She became eighteen years of age this year.
2. "Nor shall any State deprive any person of life, liberty, or property without due process of
law . . . ." U.S. Const. amend. XIV. 
3. "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities,
or in any manner disfranchised, except by the due course of the law of the land." Tex. Const. art.
I, § 19. 
4. Although not raised as an issue either at trial or on appeal, we note that the court's actions
appear to have been in violation of J.L.D.'s due process rights in another way as well. The record
reveals that in the first community supervision modification proceeding, J.L.D. signed a stipulation
of evidence admitting that she violated her community supervision by committing the second assault. 
Statements by defense counsel to the trial court suggest that this was done pursuant to a plea
bargaining agreement in return for the five month extension of supervisory time. The United States
Supreme Court has held that when a prosecutor makes a promise as part of a plea bargain, due
process of law requires that the promise must be kept. See Santobello v. New York, 404 U.S. 257,
262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); see also Gibson v. State, 803 S.W.2d 316, 318 (Tex.
Crim. App. 1991). Using the same act to subsequently revoke J.L.D.'s community supervision
appears to have been a breach of the plea bargain. 



M>Sailo, 910 S.W.2d at 188. The trial court
did not abuse its discretion by denying Teurman's motion to suppress. We overrule
Teurman's first point of error.



B. Jury Instructions.

 1. Article 38.23 Instruction.

 Teurman next contends the trial court erred by refusing to instruct the jury to disregard
any illegally obtained evidence in accordance with Tex. Code Crim. Proc. Ann. art. 38.23.
"A trial court is required to include an Article 38.23 instruction in the jury charge only if
there is a factual dispute as to how the evidence was obtained." Balentine v. State, 71 S.W.3d
763, 773 (Tex. Crim. App. 2002). If the underlying facts are uncontested, no fact issue
exists, and the instruction need not be given. Holmes v. State, 962 S.W.2d 663, 673 (Tex.
App.-Waco 1998, pet. ref'd, untimely filed). Nor must a trial court give the instruction if the
defendant advances a legal argument, rather than a factual dispute, that the officer lacked
probable cause. See Balentine, 71 S.W.3d at 773 (appellant's legal challenge that person
sharing apartment lacked legal authority to consent to search not evidence of factual dispute;
trial court properly denied 38.23 instruction). 

 Teurman cites Vrba v. State, 69 S.W.3d 713 (Tex. App.-Waco 2002, no pet.), in
support of his claim that the trial court erred by denying the Article 38.23 instruction. In
Vrba the defendant testified. Id. at 717. It was Vrba's own testimony that provided evidence
of a factual dispute. Id. The Tenth Court reasoned that though the testimony may be self-serving, such evidence still provides a factual dispute requiring the requested charge. Id. at
719. In this case, Teurman did not testify. He presented no evidence to controvert Mohler's
corroboration of the concerned citizen's complaint. Therefore, Vrba is inapplicable. Teurman argues a factual dispute exists as to whether Officer Mohler had probable
cause to stop Teurman's truck. Officer Mohler saw Teurman change lanes of traffic without
using his signal. Mohler had information from a concerned citizen that the driver might be
intoxicated. Teurman did not controvert this evidence at trial. Cf. Smith v. State, 65 S.W.3d
332, 342-43 (Tex. App.-Waco 2001, no pet.) (defendant's failure to bring forth conflicting
evidence negates requirement for 38.23 charge). Accordingly, the trial court did not err by
denying Teurman's requested instruction pursuant to Article 38.23. We overrule Teurman's
second point of error.

 2. Definitions: Probable Cause and Failure To Maintain a Single Marked Lane.

 Teurman also requested the lower court to define the term "probable cause" and the
offense of failing to maintain a single marked lane of traffic. Teurman requested these
definitions for use in conjunction with the Article 38.23 instruction. On appeal, Teurman
presents no additional reasons, independent of the Article 38.23 instruction, as to why these
definitions should have been given.

 The lower court denied Teurman's requested instructions. We have already found the
Article 38.23 instruction unnecessary. It follows that the requested definitions in support of
that charge would also be unnecessary. The trial court did not err by denying Teurman's
request for definitions of the offense of failure to maintain a single marked lane and the term
"probable cause."

C. Incomplete Reporter's Record

 In his final point of error, Teurman claims he is entitled to a new trial because the
reporter's record is incomplete. The reporter's record in this case originally lacked a
transcript of voir dire and closing arguments. After Teurman filed his brief, but before the
State submitted its brief, the reporter filed a supplemental record of closing arguments. 
Therefore, Teurman's complaint with regard to closing arguments is now moot. We,
therefore, are to determine only whether Teurman is entitled to a new trial because there is
no voir dire transcript.

 An appellant is entitled to a new trial under the following circumstances:


 if the appellant has timely requested a reporter's record;



 if, without appellant's fault, a significant portion of the court reporter's
notes and records has been lost or destroyed or-if the proceedings were
electronically recorded-a significant portion of the record has been lost
or destroyed or is inaudible;



 
 if the lost, destroyed, or inaudible portion of the reporter's record, or the
lost or destroyed exhibit, is necessary to the appeal's resolution; and;
 if the parties cannot agree on a complete reporter's record.
 


 

Tex. R. App. P. 34.6(f).

 Teurman is clearly not responsible for the absence of the voir dire transcript and did 
nothing to waive its recording or transcription. Tex. R. App. P. 13.1(a). However, none of
Teurman's contentions of error implicate any claim of error at voir dire. The voir dire
transcript is therefore unnecessary for resolution of this appeal. Tex. R. App. P. 34.6(f)(3). 
Accordingly, we overrule Teurman's final point of error. 

 There being no other points of error raised, we affirm the trial court's judgment.

 


 Josh R. Morriss, III

 Chief Justice 


Date submitted: August 20, 2002

Date decided: September 25, 2002


Do not publish.