Affirmed and Memorandum Opinion filed May 20, 2008








Affirmed and Memorandum Opinion filed May 20, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00318-CR

____________

 

MARCO RESENDEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 178th
District Court

Harris County, Texas

Trial Court Cause No. 1102936

 



 

M E M O R A N D U M   O P I N I O N

After
the trial court denied his motion to suppress, appellant, Marcos Resendez,
entered a plea of guilty to one count of possession of marijuana.  The trial
court then found him guilty and sentenced him to five years imprisonment.  On
appeal, appellant argues that the trial court erred in not suppressing (1)
physical evidence seized at his residence because the original entry into his
residence was illegal and because the consent provided for the evidentiary
search was not voluntary, and (2) his oral statements to police after their
entry into his residence but before he was read his Miranda rights.  We
affirm.








I.          Background

Sergeant
Jose Diaz of the Texas Department of Public Safety, Narcotics Division Task
Force, testified during the Motion to Suppress hearing.  Officer Diaz received
information on February 3, 2007, from ATF agents, who themselves had received a
tip from a confidential informant, regarding a possible Akick robbery@ at appellant=s home.  Diaz interpreted the tip to
mean that the targeted residence might be a Astash house@; that the individuals who had
delivered the drugs were in a dispute with the residents; that they were
planning to steal the drugs back; and that they would harm appellant and his
family in the process.[1]  The decision
to act on the information was based on the safety of those in the home. 
Regarding his initial approach to the house, Diaz noted that it was nearly dark
and the street lighting was dim, and he was mindful of the fact that narcotics
traffickers commonly carry weapons.








Diaz
further testified that as he approached the house along with another uniformed
trooper and several ATF agents, none of them had weapons drawn.  Appellant
opened the door after Diaz announced his group=s presence.  When the door was
opened, Diaz instantly smelled the odor of both fresh and burning marijuana. 
Diaz asked about the presence of drugs, and appellant Awent to the ground on his own@ upon seeing the police.  Diaz asked
appellant to get up and join him in the foyer.  Appellant was cooperative and
pleasant and Aknew right away why [the police] were there so he helped out the whole
way.@  Diaz later testified during
cross-examination that while appellant was on the ground, he was pat searched,
handcuffed, and then walked back to the front door.  He described appellant as
very nervous and agitated.  According to the officer, at no time was a gun ever
pointed at anyone.[2]

After
the discussion at the door, Diaz accompanied appellant back to Diaz=s surveillance truck.  Appellant was
uncuffed and the two discussed the information regarding the kick robbery. 
During this time, appellant remained cooperative and gave Diaz additional
information, including who had delivered the drugs, what they drove, and where
weapons and marijuana were held inside the house.

While
Diaz and appellant were at the truck, agents conducted a protective sweep of
the house for safety reasons.[3]  During the
sweep, marijuana weighing 1,200 pounds was observed in plain view.  At some
point after the sweep, appellant consented to a search of the house and then
accompanied Diaz on the search.  The exact timing of the consent with respect
to the initial sweep is not clear from the testimony, but it is clear that
consent was given before the subsequent search was conducted.  Later that
night, appellant=s home was struck by thirty rounds of fire from an AK47 and
ten from a shotgun.








In
describing the circumstances surrounding his request for consent to search the
home, Diaz testified that he read the consent form to appellant rather than let
appellant read it himself.  He also confirmed that (1) no one ever told
appellant that he had to consent, (2) appellant never asked whether he had to
consent, (3) appellant never indicated that he did not want to consent, and (4)
no threats were made regarding the need to consent.  Diaz testified that
appellant signed the consent freely and voluntarily.  Diaz explained that the
right to refuse consent is mentioned in the written consent form; therefore,
appellant was informed of his right to refuse consent in the process of being
read the contents of the consent form.  Though the conversation between Diaz
and appellant was in mixed English and Spanish, the consent form was read only
in English.[4]

II.        Search and Seizure of Physical Evidence

In his first
issue, appellant argues that the initial entry of the police into his house
lacked probable cause and,  without a warrant, was illegal.  Further, appellant
argues that the subsequent search of his home was also illegal and therefore
any physical evidence seized therein should have been suppressed.

A.        Standards of Review








As a general rule, the appellate courts afford almost total
deference to a trial court=s determination of historical facts that
the record supports, especially when the trial court=s findings are
based on an evaluation of witness credibility and demeanor.  Loserth v.
State, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998) (explaining Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).  Here, the trial court
made no formal findings of fact; thus, we view the evidence in the light most
favorable to the trial court=s ruling and uphold that ruling if proper
under any theory of law applicable to the case.  Estrada v. State, 154
S.W.3d 604, 607 (Tex. Crim. App. 2005); State v. Ross, 32 S.W.3d 853,
856 (Tex. Crim. App. 2000).

Because the determination of whether probable cause exists
is a mixed question of law and fact, we review de novo the application of the
law of search and seizure to the facts of the case.  Estrada, 154 S.W.3d
at 607; see also Ross, 32 S.W.3d at 856 (noting that this standard
applies where the trial court has established facts either impliedly or
expressly).[5]

          When
a defendant in a criminal proceeding alleges a violation of the Fourth
Amendment, the presumption that the police conduct was proper is rebutted by
the defendant=s showing that the search was conducted without a
warrant.  Amador v. State, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). 
Under both the United States and Texas constitutions, a warrantless search of a
residence is illegal unless probable cause exists in combination with exigent
circumstances; however, this principle is subject to a Afew specifically
defined and well established exceptions.@  Estrada 154
S.W.3d at 608 (quoting McGee v. State, 105 S.W.3d 609, 615 (Tex. Crim.
App. 2003)).  Probable cause to search exists when reasonably trustworthy facts
and circumstances within the knowledge of the officer on the scene would lead a
person of reasonable prudence to believe that the instrumentality of a crime or
evidence of a crime will be found.  Id. at 609.  Exigent circumstances
justifying a warrantless entry include the need to:  (1) render aid or
assistance to persons whom the officers reasonably believe are in need of
assistance; (2) prevent destruction of evidence or contraband; and (3) protect
the officers from persons whom they reasonably believe to be present and armed
and dangerous.  Id. at 608 n.12.








Voluntary consent to search is a well established exception
to the warrant and probable cause requirements of the Fourth Amendment to the
United States Constitution.  Montanez v. State, 195 S.W.3d 101, 105
(Tex. Crim. App. 2006).  Under Article I, Section 9 of the Texas Constitution,
voluntary consent must be proven by clear and convincing evidence.  Id.

B.        Initial Entry 

Our
analysis begins with whether the initial entry was justified by probable cause
coupled with exigent circumstances.  Here, Estrada is particularly
instructive.  Like the present case, the police officer in Estrada smelled
marijuana when the door of a residence was opened, a fact that the court
stressed was an Aelement or layer@ in determining whether probable
cause existed, though not by itself sufficient.  154 S.W.3d at 607-09.  A
decisive additional fact in Estrada was that upon arriving at the
residence, minors were observed trying to leave in their car and then admitted
to police that they had been drinking alcohol and smoking marijuana inside the
residence.  Id.  In addition, the police officer had smelled marijuana
on the defendant when she had met the police at the end of the driveway to her
house.  Id. at 606.  The Estrada court found probable cause for
the search of the residence based on the combination of the admission of the
minors and the detection of marijuana at the door and on the defendant.  Id.
at 609.

In Parker
v. State, 206 S.W.3d 593 (Tex. Crim. App. 2006), another case where
marijuana was detected at the outset of a police entry into a residence, the
Court of Criminal Appeals elaborated upon the relevance that the detection of
ongoing use of contraband has in regard to a finding of probable cause.

The odor of contraband is certainly
an important fact which may (or may not) be dispositive, given a specific
context, in assessing whether probable cause exists.  But probable cause does
not depend upon the accumulation of only those facts which show overtly criminal
conduct.  Instead, probable cause is the accumulation of facts which, when
viewed in their totality, would lead a reasonable police officer to conclude,
with a fair probability, that a crime has been committed or is being committed
by someone.

Id. at 599.








In the
present case, Diaz testified that when appellant opened the door to his house,
Diaz Ainstantly smelled . . . a real strong
odor of burning marijuana and then . . . fresh marijuana.@  Consistent with Parker, the
trial court could have reasonably given considerable weight to the smell of the
contraband.  Additionally, the detection of marijuana was consistent with the
informant=s tip that a major delivery of drugs had been made to the house, a
delivery that brought with it imminent danger to the residents of the house.[6] 
Notably, in Estrada and Parker, both of which focused upon the
smell of marijuana at the entrance to a house as a prelude to police entry, the
tip upon which the police initially relied was unrelated to drug use, yet in
each case probable cause was found.[7]  Also,
consistent with the facts in Parker and Estrada, there were other
circumstances that the trial court could have relied upon to find that police
entry was justified.  Specifically, Diaz testified as to his concern for the
safety of his officers in their approach to the house, knowing that there may
have been armed individuals inside the house.  Diaz also explained that part of
the reason for performing a sweep of the house after entry was to guard against
an assault by another person who might be in the house (a particular concern
here given that the house was reputedly a Astash house,@ and a Akick robbery@ was reportedly scheduled to occur at
some point).  In addition, Diaz characterized the behavior of appellant in
dropping to the floor upon seeing the police as Aodd@; such conduct raised a Asafety issue@ in his mind.








In light of these facts and the guidance of Parker,
the trial court could have reasonably found there to be trustworthy facts and
circumstances within the knowledge of officer Diaz leading a person of
reasonable prudence to believe that the instrumentality of a crime or evidence
of a crime would be found.  We therefore hold that the trial court could have
found that probable cause supported the action of the police in entering
appellant=s house.

In
addition to the inquiry into probable cause, we must also consider whether the
original entry into the house was supported by exigent circumstances.  See Estrada 154 S.W.3d at 608
(holding that a warrantless search of a residence is illegal unless probable
cause exists in combination with exigent circumstances).  Exigent circumstances include the
need to:
(1) render aid or assistance; (2) prevent destruction of contraband; and (3)
protect officers.  Id. at 608 n.12.  In reversing the court of appeals, the
Estrada court pointed to the facts that police had seen minors
attempting to leave the premises and had heard people inside the house who did
not respond when the police first announced their presence.  Id. at
610.  The court found that those facts supported a finding that the warrantless
search was justified by the need to prevent the possible destruction of
evidence in the time it would have taken the police to procure a warrant.  Id.
 The Estrada court also found support in evidence that the police
had reason to believe the people inside the house were armed and dangerous, and
out of concern for his own safety, the officer=s stepping inside the house was
justified by his wanting to see for himself who was present in the house.  Id.









The
facts before us show that the police had information suggesting that drug
traffickers had already delivered drugs to the house.  Diaz testified that when
dealing with drug traffickers, guns are often present.  The information
received by the police also indicated that the drug traffickers intended to
return to the residence to retake their drugs and harm the residents.  Diaz
considered appellant=s home to be a possible stash house for contraband.  Diaz=s testimony clearly indicated that
their reasons for approaching the house included concern for the safety of its
residents based on the tip information, a concern that was discussed with
appellant in conversation subsequent to the original entry.  Diaz=s testimony regarding his concern for
the safety of his own personnel has already been noted.  These facts and
circumstances collectively show that the trial court had ample evidence upon
which it could have concluded that exigent circumstances existed with respect
to the original entry into appellant=s home.[8] 
Because the trial court did not err in finding that the initial entry into
appellant=s house was supported by probable cause and exigent circumstances,
appellant=s first argument is without merit.

C.        Subsequent Search

Appellant
next argues that the consent he provided to the police to search the house was coerced
and, therefore, did not constitute an exception to the general prohibition of
warrantless searches.  In order to show that proper consent was provided, the
State must demonstrate that consent was not the result of duress or coercion.  Gutierrez
v. State, 221 S.W.3d 680, 686 (Tex. Crim. App. 2007).  Whether or not
consent in a particular case was voluntary turns on questions of fact, and a
finding in this regard is reviewed only for an abuse of discretion.  Johnson
v. State, 226 S.W.3d 439, 443 (Tex. Crim. App. 2007).








A judge
may believe or disbelieve all or any part of a witness=s testimony.  Ross, 32 S.W.3d at 855.  In the absence of formal
findings of fact, we give deference to the trial court=s ruling if supported by the record. 
Id. at 856.  In the
case before us, the court heard conflicting evidence as to the circumstances
surrounding the consent form signed by appellant.  The trial judge=s decision as to
whether to believe the testimony of Officer Diaz or that of appellant was based
on credibility and demeanor, and we therefore must give almost total deference
to that decision.  See Loserth, 963 S.W.2d at 772.  The trial court acted within its
discretion in accepting the testimony of Diaz, who stated that he read the
consent to appellant in full, under calm circumstances, with no threats raised
or handcuffs used, and following a calm conversation.[9] 
Additionally, appellant had clearly presented to Diaz that he was concerned
about his family and wanted to cooperate.  Testimony by both appellant and Diaz
indicated that appellant had been cooperative throughout his interaction with
the police.  Appellant testified that at no time did Diaz ever raise his voice
toward appellant.  Appellant also testified that right after Diaz told him
about the threat to his family, appellant disclosed to Diaz the fact of
marijuana in the house and told Diaz where it could be found.

Based on
this testimony, it was reasonable for the trial court to conclude that appellant
voluntarily signed the consent form.  Accordingly, in regard to the subsequent
search, there was no error on the part of the trial court.  We find that trial
court could have reasonably found that the initial entry was supported by
probable cause and exigent circumstances, and that the subsequent search was
supported by voluntary consent.  Therefore, the trial judge did not err in
denying the motion to suppress the physical evidence.  We overrule appellant=s first issue.

III.       Statements made in custody

In his
second issue, appellant argues that all statements he made while in custody,
prior to the reading of Miranda rights, are inadmissible, relying on Vrba
v. State, 69 S.W.3d 713 (Tex. App.CWaco 2002, pet.  ref=d).  Generally, to preserve error on
a motion to suppress, a defendant is required to obtain a ruling from the trial
court on the motion.  Tex. R. App. Pro. 33.1(a)(2); Dunavin v. State,
611 S.W.2d 91, 94, 97 (Tex. Crim. App. 1981) (finding the defendant failed to
preserve error where trial court refused to rule on motion to suppress until Afacts were developed,@ and defendant failed to re-raise the
motion); Bollinger v. State, 224 S.W.3d 768, 778 (Tex. App.CEastland 2007, pet. ref=d) (holding defendant who failed to
obtain a ruling on any of three pretrial motions to suppress failed to preserve
error).








Here,
during the hearing on the motion to suppress, the trial court denied the motion
in regard to the physical evidence but expressly deferred a ruling on the
statements to a point in time when it would be known whether the case would go
to trial.  Because appellant subsequently pleaded guilty, the case never went
to trial, appellant never re-raised the motion to suppress the statements, and
the trial court never ruled in regard to the statements.  Consequently,
appellant failed to preserve the issue for appellate review.[10] 
We therefore overrule appellant=s second issue.

We
affirm the trial court=s judgment.

 

 

/s/        Adele Hedges

Chief Justice

 

Judgment rendered
and Memorandum Opinion filed May 20, 2008.

Panel consists of
Chief Justice Hedges and Justices Anderson and Boyce.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]   Diaz testified that he no longer had a copy of the
report documenting the tip and had no knowledge of the informant=s identity, but that it was very common to use
information from confidential informants.  Under cross-examination, Diaz
further testified that an ATF agent had contacted the DPS, saying that the
dispute involved 3,000 pounds of marijuana delivered to appellant=s home the previous Thursday, and that the reason for
the threat upon appellant=s life was nonpayment for the drugs.





[2]  Appellant=s
recollection of the events that transpired at the door differs markedly from
Diaz=s testimony.  Appellant testified that he had seen the
police through the window, and when he went to open the door, Athey pushed it,@
and Officer Diaz pointed a gun at him.  Appellant was ordered to get on the
floor, and an agent handcuffed him.  Hands cuffed behind his back, appellant
was brought outside by the agents, A[dragged]
from behind,@ and put on the ground near the house.  Appellant=s wife corroborated his testimony, saying that the
police had pushed or kicked the door in when her husband opened it Abecause I could see his hand fly out@ when it was opened.  She testified that the agents= guns were drawn upon entry and were pointed at
appellant while he was on the floor.





[3]   In his testimony, Diaz distinguished between a Asearch@ and a Asweep.@  The
protective sweep was performed as a precautionary measure for safety purposes,
even though marijuana was observed during the sweep.  According to Diaz, the
search was conducted later, after the sweep had been completed and after consent
to the search had been signed.

Legally speaking, a protective
sweep is a Aquick and limited search of
premises, incident to an arrest and conducted to protect the safety of police
officers or others.@  Reasor v. State, 12 S.W.3d
813, 815 (Tex. Crim. App. 2000) (quoting Maryland v. Buie, 494 U.S. 325,
327 (1990)).  A sweep is not a thorough search of the premises; rather, it is
only a cursory inspection of those spaces where a person might be found.  Buie,
494 U.S. at 335; Reasor, 12 S.W.3d at 816.

 





[4]   Here again, appellant=s testimony differs dramatically.  Appellant testified that an agent
who was holding a rifle near Diaz=s
truck told appellant that if he did not sign the consent form they would Atear down the house.@  Appellant feared for his wife=s
safety, wanted to cooperate, and signed the form after Diaz had the other agent
uncuff appellant so he could do so.  Appellant asserted that the consent form
was never read to him, that it was Apresented
me so I sign it (sic).@  Appellant acknowledged on several occasions that he
wanted to cooperate but insisted that part of the reason was because a gun was
being pointed at him.





[5]   The Ross court does point out one exception
to the general rule regarding de novo review of the existence of probable
cause: where the sole evidence presented is that of the arresting
officer, almost total deference is afforded to the ruling of the trial court. 
32 S.W.3d at 856.  Such is not the case here.





[6]  Other than a general assertion that the police
lacked probable cause, appellant raises no issue with regard to the credibility
of the tip provided by the confidential informant.  It should be noted that a
tip from an informant, even if anonymous, can provide a basis for probable
cause.  See Eisenhauer v. State, 678 S.W.2d 947, 955 (Tex. Crim. App.
1984).  Indicia of credibility of the informant=s tip include the extent of detail that is provided and whether future
events are predicted; also supportive of probable cause are observations by
police that corroborate the tip information.  See id; see also Illinois v.
Gates, 462 U.S. 213, 244-46 (1983); Rojas v. State, 797 S.W.2d 41,
44 (Tex. Crim. App. 1990).  Generally, an anonymous phone call, without
corroboration, will never provide sufficient facts that would authorize a
warrantless arrest or search.  Glass v. State, 681 S.W.2d 599, 601 (Tex.
Crim. App. 1984).  In this case, the informant=s tip included details (the amount of marijuana involved, the nature of
the dispute between appellant and those who made the delivery), and it also
predicted future events (that the drug deliverers would return to the residence
to take back their drugs); there was also corroboration of the tip by the
police based on physical observations (smelling the odor of marijuana upon
opening the door).





[7]  The informants=
tips  in Estrada and Parker respectively involved vehicular
speeding, loud music (154 S.W.3d at 605), and the serving of alcohol to minors
(206 S.W.3d at 595). 





[8]  Parker confirmed that the same facts can be
supportive of both probable cause as well as exigent circumstances. 206 S.W.3d
at 600-01.





[9]   According to Diaz, while cuffs were used in the
initial confrontation as part of stabilizing the situation, after appellant put
himself on the floor, they were removed when appellant and Diaz walked out of
the house.





[10]  It should be noted that under certain circumstances,
an implied adverse ruling can be found based on events that take place after a
hearing, including a certification by the trial court of appellant=s right to appeal based on an implied pre-trial
ruling.  Montanez
v. State, 195
S.W.3d 101, 104-05 (Tex. Crim. App. 2006). 
In Montanez, the court record contained no formal ruling on the motion
to suppress.  Id. at 103.  However, the transcript of the hearing showed
that the trial judge stated a clear intent to make a ruling on the motion the
next day, explaining that he still needed to review a videotape and possibly
the State=s brief in order to be in a position to make a ruling.
 Id. at 103, 105.  Corroborating that intent was the
certification of the right to appeal, wherein the judge checked a box to
indicate that it was Aa plea-bargain case, and is on  matters that were
raised by written motion filed and ruled on before trial.@  Id.  In addition, the last line on the
trial court=s docket sheet stated Aappeal preserved as to issues presented.@  Id.  Citing those three indicators of the trial court=s intent, the Court of Criminal Appeals found an
implied adverse ruling on the defendant=s
motion to suppress.  Id. at 105 (finding that the trial judge=s actions and statements had Aunquestionably indicate[d]@ an adverse ruling on the motion (quoting Rey v.
State, 897 S.W.2d 333, 336 (Tex. Crim. App. 1995)).

Montanez is distinguishable from the present case in two
critical respects.  First, the judges selected different check-boxes in their
appeal certifications (one indicating that written motions had been ruled on
and one not).  In addition, while the Montanez trial judge had clearly
stated an intent at the time of the hearing to rule on the matter the next day,
the trial judge in the present case expressed no such intent with respect to
custodial statements.  To the contrary, the trial judge here deferred the
matter to an indefinite future date.  Accordingly, we find nothing in the
record before us upon which we could imply an adverse ruling by the trial judge
regarding custodial statements.