In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00043-CR


______________________________




RICHARD S. TEURMAN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Criminal Court No. 4


Dallas County, Texas


Trial Court No. MB00-25432-E




 




Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 Richard S. Teurman appeals his conviction for driving while intoxicated. A jury
found him guilty, and the trial court assessed punishment at 180 days in jail, probated for a
period of two years. The trial court also imposed a fine of $1,250.00. In several points of
error, Teurman contends the trial court erred in denying his motion to suppress and in
refusing his requested jury instructions. Teurman also contends he is entitled to a new trial
because the reporter's record is incomplete. For the reasons set forth below, we affirm the
judgment of the trial court.

 Although the sufficiency of the evidence is not at issue, we provide the following
summary of the proof as a context for our review. On the evening of August 2, 2000, tow-truck driver Michael P. Barnes called the Garland Police Department to report a suspected
intoxicated driver. Earlier that evening, Teurman drove his large white 4x4 truck and ski
boat in front of Barnes's place of employment. Teurman parked so that his truck and boat
blocked both the entrance and the exit of the tow-truck business. Barnes testified he watched
Teurman remove a beer from a cooler in the boat and walk back toward Teurman's truck. 
Shortly thereafter Teurman vomited beside his truck. Barnes also saw Teurman urinating in
the parking lot. 

 Approximately forty-five minutes later, Barnes confronted Teurman, who smelled
strongly of alcohol, about moving Teurman's truck out of the parking lot. Eventually,
Teurman complied with Barnes's request. After moving his vehicle, Teurman threw an
empty beer can from his truck to the ground and retrieved another beer from his cooler. 
Teurman eventually left the area - ski boat in tow - nearly colliding with another car as he
did. According to Barnes, who then followed the truck, Teurman "couldn't hold a single lane
and ran one car onto a side street." 

 As Barnes drove behind Teurman, Barnes saw Teurman run another car off the road
into a yard. Barnes then called police. Barnes gave Teurman's location and direction of
travel  to  the  9-1-1  dispatcher  and   also  gave  a  description  of  the  vehicle. Soon
thereafter, J. L. Mohler of the Garland Police Department intercepted Teurman. Officer
Mohler observed Teurman change from the left lane of traffic to the right lane of traffic, then
back to the left lane of traffic, without signaling. Officer Mohler then stopped Teurman's
vehicle.

A. Motion To Suppress.

 1. Standard of Review.

 In his first point of error, Teurman contends Officer Mohler lacked probable cause to
stop Teurman's truck. A trial court's ruling on a motion to suppress is reviewed for abuse of
discretion. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). In a suppression
hearing, the trial court is the sole trier of fact, judge of witness credibility, and arbiter of the
weight to be given to testimony. Green v. State, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996). 
We examine the evidence in the light most favorable to the trial court's ruling, State v.
Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999), and afford almost total deference to
the trial court's determination of historical facts that the record supports, especially when the
fact findings are based on an evaluation of the witnesses' credibility and demeanor. State v.
Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997). We review de novo the court's application of the law of search and
seizure to those facts. Ross, 32 S.W.3d at 856. As no findings of fact or conclusions of law
were filed, we will assume that the trial court made implicit findings of fact that support its
ruling as long as those findings are supported by the record. If the trial court's decision is
correct on any theory of law applicable to the case, we will affirm the decision. Id. at 855-56.

 2. The Terry Framework.

 Terry v. Ohio, 392 U.S. 1 (1968), provides the framework for our inquiry into this
traffic stop. The question in Terry was whether it is always unreasonable for a peace officer
to seize a person and subject him to a limited search unless there is probable cause for an
arrest. Id. at 15. The Court held that even though a "stop" and "frisk" is a search and seizure
under the Fourth Amendment, Id. at 16-17, such actions by peace officers could be
reasonable under the Fourth Amendment. The Court adopted a two-part inquiry to determine
the reasonableness of such an investigative detention: (1) whether the officer's action is
justified at its inception and (2) whether it is reasonably related in scope to the circumstances
that justify the initial interference. Id. at 19-20. In this case, Teurman does not contest the
scope of the detention; we will therefore focus our review only on the initial justification for
the traffic stop.

 3. Initial Justification for Stop.

 Under the test's first part, "the police officer must be able to point to specific and
articulable facts which, taken together with rational inferences from those facts, reasonably
warrant that intrusion." Id. at 21. In assessing whether the intrusion was reasonable, an
objective standard is used. The question is whether the facts available to the officer at the
moment of the seizure or search would cause a person of reasonable caution to believe the
action taken was appropriate. Id. at 21-22. "The officer must have a reasonable suspicion
that some activity out of the ordinary is occurring or has occurred, some suggestion to
connect the detained person with the unusual activity, and some indication the activity is
related to a crime." State v. Sailo, 910 S.W.2d 184, 188 (Tex. App.- Fort Worth 1995, pet.
ref'd) (citing Johnson v. State, 658 S.W.2d 623, 626 (Tex. Crim. App. 1983)). An
investigative detention not based on reasonable suspicion is unreasonable and therefore in
violation of the Fourth Amendment.

 "A tip by an unnamed informant of undisclosed reliability standing alone rarely will
establish the requisite level of suspicion necessary to justify an investigative detention."
Sailo, 910 S.W.2d at 188 (citing Alabama v. White, 496 U.S. 325, 329 (1990)). The officer
must have some indication that the information is reliable, "some additional facts from which
a police officer may reasonably conclude that the tip is reliable and a detention is justified." 
Id. Concerned citizens who present themselves directly to the police officers are inherently
more reliable than one who makes an anonymous phone call. Id. A detailed description of
the actor's malfeasance, when combined with a statement that the event was observed
personally, enhances the informant's reliability. Id.

 Teurman argues there was insufficient corroboration of Barnes's complaint to warrant
police intervention. We disagree. At the suppression hearing, Officer Mohler testified he
received a dispatch of a possible reckless or intoxicated driver running cars off the roadway
and weaving. The dispatcher described the truck as a full-size white Dodge 4x4 truck towing
a boat. The dispatcher also had the truck's license plate number. The dispatcher's information
was based on the description Barnes gave the dispatcher. 

 When Officer Mohler caught up with the truck a few minutes later, he found a vehicle
matching the description he received from the dispatcher. The dispatcher told Mohler the
eyewitness had seen the truck weaving in and out of his lane. Mohler observed similar
weaving behavior in the white Dodge. The license plate on Teurman's truck matched the one
Barnes gave the dispatcher. The truck was towing a boat, just as Barnes reported. 

 Barnes's information was sufficiently corroborated. Officer Mohler reasonably
believed, given the totality of the circumstances, that the white truck towing the boat was the
same person reported by Barnes. Officer Mohler took appropriate action by stopping
Teurman's vehicle. See Terry, 392 U.S. at 21. Furthermore, given the facts available to
Officer Mohler at the time - personally observed weaving, a report of a white truck running
cars off the road and the driver having previously consumed alcohol - the officer reasonably
believed "that some activity out of the ordinary is occurring or has occurred, [that there was]
some suggestion to connect the detained person with the unusual activity, and some
indication the activity is related to a crime." See Sailo, 910 S.W.2d at 188. The trial court
did not abuse its discretion by denying Teurman's motion to suppress. We overrule
Teurman's first point of error.



B. Jury Instructions.

 1. Article 38.23 Instruction.

 Teurman next contends the trial court erred by refusing to instruct the jury to disregard
any illegally obtained evidence in accordance with Tex. Code Crim. Proc. Ann. art. 38.23.
"A trial court is required to include an Article 38.23 instruction in the jury charge only if
there is a factual dispute as to how the evidence was obtained." Balentine v. State, 71 S.W.3d
763, 773 (Tex. Crim. App. 2002). If the underlying facts are uncontested, no fact issue
exists, and the instruction need not be given. Holmes v. State, 962 S.W.2d 663, 673 (Tex.
App.-Waco 1998, pet. ref'd, untimely filed). Nor must a trial court give the instruction if the
defendant advances a legal argument, rather than a factual dispute, that the officer lacked
probable cause. See Balentine, 71 S.W.3d at 773 (appellant's legal challenge that person
sharing apartment lacked legal authority to consent to search not evidence of factual dispute;
trial court properly denied 38.23 instruction). 

 Teurman cites Vrba v. State, 69 S.W.3d 713 (Tex. App.-Waco 2002, no pet.), in
support of his claim that the trial court erred by denying the Article 38.23 instruction. In
Vrba the defendant testified. Id. at 717. It was Vrba's own testimony that provided evidence
of a factual dispute. Id. The Tenth Court reasoned that though the testimony may be self-serving, such evidence still provides a factual dispute requiring the requested charge. Id. at
719. In this case, Teurman did not testify. He presented no evidence to controvert Mohler's
corroboration of the concerned citizen's complaint. Therefore, Vrba is inapplicable. Teurman argues a factual dispute exists as to whether Officer Mohler had probable
cause to stop Teurman's truck. Officer Mohler saw Teurman change lanes of traffic without
using his signal. Mohler had information from a concerned citizen that the driver might be
intoxicated. Teurman did not controvert this evidence at trial. Cf. Smith v. State, 65 S.W.3d
332, 342-43 (Tex. App.-Waco 2001, no pet.) (defendant's failure to bring forth conflicting
evidence negates requirement for 38.23 charge). Accordingly, the trial court did not err by
denying Teurman's requested instruction pursuant to Article 38.23. We overrule Teurman's
second point of error.

 2. Definitions: Probable Cause and Failure To Maintain a Single Marked Lane.

 Teurman also requested the lower court to define the term "probable cause" and the
offense of failing to maintain a single marked lane of traffic. Teurman requested these
definitions for use in conjunction with the Article 38.23 instruction. On appeal, Teurman
presents no additional reasons, independent of the Article 38.23 instruction, as to why these
definitions should have been given.

 The lower court denied Teurman's requested instructions. We have already found the
Article 38.23 instruction unnecessary. It follows that the requested definitions in support of
that charge would also be unnecessary. The trial court did not err by denying Teurman's
request for definitions of the offense of failure to maintain a single marked lane and the term
"probable cause."

C. Incomplete Reporter's Record

 In his final point of error, Teurman claims he is entitled to a new trial because the
reporter's record is incomplete. The reporter's record in this case originally lacked a
transcript of voir dire and closing arguments. After Teurman filed his brief, but before the
State submitted its brief, the reporter filed a supplemental record of closing arguments. 
Therefore, Teurman's complaint with regard to closing arguments is now moot. We,
therefore, are to determine only whether Teurman is entitled to a new trial because there is
no voir dire transcript.

 An appellant is entitled to a new trial under the following circumstances:


 if the appellant has timely requested a reporter's record;



 if, without appellant's fault, a significant portion of the court reporter's
notes and records has been lost or destroyed or-if the proceedings were
electronically recorded-a significant portion of the record has been lost
or destroyed or is inaudible;



 
 if the lost, destroyed, or inaudible portion of the reporter's record, or the
lost or destroyed exhibit, is necessary to the appeal's resolution; and;
 if the parties cannot agree on a complete reporter's record.
 


 

Tex. R. App. P. 34.6(f).

 Teurman is clearly not responsible for the absence of the voir dire transcript and did 
nothing to waive its recording or transcription. Tex. R. App. P. 13.1(a). However, none of
Teurman's contentions of error implicate any claim of error at voir dire. The voir dire
transcript is therefore unnecessary for resolution of this appeal. Tex. R. App. P. 34.6(f)(3). 
Accordingly, we overrule Teurman's final point of error. 

 There being no other points of error raised, we affirm the trial court's judgment.

 


 Josh R. Morriss, III

 Chief Justice 


Date submitted: August 20, 2002

Date decided: September 25, 2002


Do not publish.



cing\,QuotationCxSpLast";
 mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:.5in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-10-079-CV%20Anderson%20County%20Bail%20Bond%20Board%20v.%20Sexton%20Opinion%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-10-079-CV%20Anderson%20County%20Bail%20Bond%20Board%20v.%20Sexton%20Opinion%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-10-079-CV%20Anderson%20County%20Bail%20Bond%20Board%20v.%20Sexton%20Opinion%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-10-079-CV%20Anderson%20County%20Bail%20Bond%20Board%20v.%20Sexton%20Opinion%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-079-CV%20Anderson%20County%20Bail%20Bond%20Board%20v.%20Sexton%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-079-CV%20Anderson%20County%20Bail%20Bond%20Board%20v.%20Sexton%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-079-CV%20Anderson%20County%20Bail%20Bond%20Board%20v.%20Sexton%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-079-CV%20Anderson%20County%20Bail%20Bond%20Board%20v.%20Sexton%20Opinion%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-079-CV%20Anderson%20County%20Bail%20Bond%20Board%20v.%20Sexton%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-079-CV%20Anderson%20County%20Bail%20Bond%20Board%20v.%20Sexton%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-079-CV%20Anderson%20County%20Bail%20Bond%20Board%20v.%20Sexton%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-079-CV%20Anderson%20County%20Bail%20Bond%20Board%20v.%20Sexton%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-079-CV%20Anderson%20County%20Bail%20Bond%20Board%20v.%20Sexton%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-079-CV%20Anderson%20County%20Bail%20Bond%20Board%20v.%20Sexton%20Opinion%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-079-CV%20Anderson%20County%20Bail%20Bond%20Board%20v.%20Sexton%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-079-CV%20Anderson%20County%20Bail%20Bond%20Board%20v.%20Sexton%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00079-CV

                                                ______________________________

 

 

                  ANDERSON COUNTY BAIL BOND BOARD,
Appellant

 

                                                                V.

 

                                   DEBORAH LEE SEXTON, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 349th
Judicial District Court

                                                          Anderson
County, Texas

                                                          Trial Court
No. 349-6424

 

                                                    
                                              

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            This case
was tried in the 349th Judicial District Court of Anderson County.[1]  The transcription of the hearing on motion
for new trial was reported by Jennifer Whitten and was filed with the District
Clerk of Anderson County on August 16, 2010, and filed with this Court on
November 12, 2010.  

            Nancy Currie
reported the bench trial portion of the record. 
Her court reporters license was suspended by the Texas Court Reporters
Certification Board as of November 30, 2010, before she had filed that portion
of the record with this Court.  Numerous
attempts to obtain Curries notes and have them forwarded to another reporter
for transcription have failed.

            This Court
has determined that the entire reporters record of the bench trial was lost or
destroyed and, pursuant to Rule 34.6(f), we contacted the parties by letter
dated April 5, 2011, to see if they could agree on the record.  Tex.
R. App. P. 34.6(f)(4).  We have
now been informed that the parties cannot agree on the appellate record and
that numerous factual issues are addressed in the missing record.  

            

 

 

            Appellant timely requested the preparation of the entire
reporters record, the loss of the record is through no fault of appellant, and
the reporters record is necessary for the appeals

resolution.  Therefore, pursuant to Rule 34.6(f), we find
the appellant is entitled to a new trial. 
  We reverse the judgment and
remand this case to the trial court for a new trial.

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          April
18, 2011 

Date Decided:             April
19, 2011

 

 

 

 

 

 











[1]Originally appealed to the Twelfth Court of Appeals,
this case was transferred to this Court by the Texas Supreme Court pursuant to
its docket equalization efforts.  See Tex.
Govt Code Ann. § 73.001 (Vernon 2005). 
We are unaware of any conflict between precedent of the Twelfth Court of
Appeals and that of this Court on any relevant issue.  See
Tex. R. App. P. 41.3.