PD-0483-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/1/2015 3:47:02 PM
Accepted 6/1/2015 4:21:15 PM
ABEL ACOSTA
CLERK

No. PD-0483-15

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

RUBEN TOTTEN,                                                          Appellant

v.

THE STATE OF TEXAS,                                                    Appellee

Appeal from Harris County

\* \* \* \* \*

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

\* \* \* \* \*

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

JOHN R. MESSINGER
Assistant State Prosecuting Attorney
Bar I.D. No. 24053705

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

## NAMES OF ALL PARTIES TO THE TRIAL COURT'S JUDGMENT

*The parties to the trial court's judgment are the State of Texas and Appellant, Ruben Totten.

*The case was tried before the Honorable Brian Rains, visiting Judge of the 228th Judicial District Court, Harris County, Texas.

*Counsel for Appellant at trial was Jimmy Ortiz, 1924 Portsmouth St., Houston, Texas 77098.

*Counsel for Appellant on appeal was Sarah V. Wood, 1201 Franklin Street, 13th Floor, Houston, Texas 77002.

*Counsel for the State at trial was Lauren Clemons and Adam Brodrick, Assistant District Attorneys, 1201 Franklin Street, Suite 600, Houston, Texas 77002.

*Counsel for the State on appeal was the Honorable David Newell, former Assistant District Attorney, 1201 Franklin, Suite 600, Houston, Texas 77002.

*Counsel for the State before this Court is John R. Messinger, Assistant State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711.

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

GROUNDS FOR REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

>    1.    **This case should be remanded because an error in the record invalidates the basis for the appeal.**
>
>    2.    **Is the possibility that an officer detained the wrong vehicle, without more, determinative of the lawfulness of a detention such that an article 38.23 instruction is required?**
>
>    3.    **Is an appellant who identifies no disputed fact issue at trial but raises multiple issues on appeal entitled to the "some harm" standard for preserved charge error?**
>
>    4.    **Should the harm analysis for the failure to give an article 38.23 instruction assume the jury would have found in the defendant's favor, or is that the point of the analysis?**

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

APPENDIX (Opinion of the Court of Appeals, Affidavit of Court Reporter)

# INDEX OF AUTHORITIES

**Cases**

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (r'hrng). . . . . . . . . . . . 7

*Hamal v. State*, 390 S.W.3d 302 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . . . 5

*Hill v. California*, 401 U.S. 797 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Holmes v. State*, 248 S.W.3d 194 (Tex. Crim. App. 2008).. . . . . . . . . . . . . . . . . 7

*Madden v. State*, 242 S.W.3d 504 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . 6, 7

*Mills v. State*, 296 S.W.3d 843 (Tex. App.–Austin 2009, pet. ref'd). . . . . . . . . . . 8

*Reeves v. State*, 420 S.W.3d 812 (Tex. Crim. App. 2013). . . . . . . . . . . . . . . . . . 8

*Totten v. State*, 01-14-00189-CR, 2015 Tex. App. LEXIS 3144
    (Tex. App.–Houston [1ˢᵗ Dist.] Mar. 31, 2015). . . . . . . . . . . . . . . . . . . . *passim*

*Vrba v. State*, 69 S.W.3d 713 (Tex. App.–Waco 2002, no pet.).. . . . . . . . . . . . . . 8

*Wooten v. State*, 400 S.W.3d 601 (Tex. Crim. App. 2013).. . . . . . . . . . . . . . . . . 8

**Rules**

TEX. R. APP. P. 34.6(e)(3)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Other**

40 GEORGE E. DIX & ROBERT O. DAWSON, CRIMINAL PRACTICE AND
    PROCEDURE (2d ed. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

No. PD-0483-15

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

RUBEN TOTTEN,                                                              Appellant

v.

THE STATE OF TEXAS,                                                      Appellee

\* \* \* \* \*

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through its State Prosecuting Attorney, and respectfully urges this Court to grant discretionary review of the above named cause, pursuant to the rules of appellate procedure.

**STATEMENT REGARDING ORAL ARGUMENT**

The State does not request oral argument.

**STATEMENT OF THE CASE**

Appellant was convicted of possession of a controlled substance and sentenced to 25 years in prison.[1]  The court of appeals held that the trial court reversibly erred

---

[1]    1 CR 100.

1

by refusing to submit an article 38.23 instruction on the lawfulness of the traffic stop that led to the discovery of the cocaine.

## STATEMENT OF PROCEDURAL HISTORY

On March 31, 2015, the court of appeals reversed appellant's conviction and remanded for a new trial in an unpublished opinion.[2] No motion for rehearing was filed. After this Court granted an extension, the State's petition is due on June 1, 2015.

## GROUNDS FOR REVIEW

1. **This case should be remanded because an error in the record invalidates the basis for the appeal.**

2. **Is the possibility that an officer detained the wrong vehicle, without more, determinative of the lawfulness of a detention such that an article 38.23 instruction is required?**

3. **Is an appellant who identifies no disputed fact issue at trial but raises multiple issues on appeal entitled to the "some harm" standard for preserved charge error?**

4. **Should the harm analysis for the failure to give an article 38.23 instruction assume the jury would have found in the defendant's favor, or is that the point of the analysis?**

## ARGUMENT AND AUTHORITIES

Appellant was convicted of possession of cocaine. He was denied an instruction pursuant to TEX. CODE CRIM. PROC. art. 38.23(a), presumably on the

---

[2] *Totten v. State*, 01-14-00189-CR, 2015 Tex. App. LEXIS 3144 (Tex. App.–Houston [1st Dist.] Mar. 31, 2015) (not designated for publication).

lawfulness of how the cocaine was obtained.[3] The court of appeals held that appellant was entitled to an instruction because, although an undercover officer requested a traffic stop of a green Ford Ranger for turning without signaling, there is evidence that the responding officers detained the wrong vehicle.[4] In a single-sentence harm analysis, it concluded, "Because appellant raised a fact issue about the legality of [the] stop, and because the narcotics seized in that stop formed the basis of appellant's conviction, appellant suffered 'some harm' from the charge error."[5] Is the possibility of a mistake, on its own, a material fact issue? If so, is being denied an article 38.23 instruction inherently harmful?

*Facts*

Officer Trant was providing undercover surveillance of a duplex complex when he saw appellant and another man pass in a green Ford Ranger and park at the complex.[6] Within the span of several minutes, one of the truck's occupants got out, walked out of Trant's view towards the duplex, and returned to the truck, which then

---

[3]   Appellant twice requested an article 38.23 instruction but did not identify any disputed issue of fact, nor did he submit a written request identifying one.  3 RR 95 ("Ask for a 38.23 instruction, Judge."); 4 RR 3 ("The only thing, once again, defense would reurge a 38.23 instruction.").

[4]   Slip op. at 12.

[5]   Slip op. at 13.

[6]   3 RR 11-13.

3

left.[7]  Trant believed this was typical of a drug transaction.[8]  When Trant saw the truck turn at a stop sign without signaling, he told nearby officers Kunkel and Betancourt to detain it.[9]  Trant gave them a description of the vehicle, the reason for the stop, and its street and direction of travel.[10]  Kunkel and Betancourt located a green Ford Ranger within a few seconds and detained it within four or five blocks of the turn.[11]  Appellant was in the truck.[12]  That encounter led to discovery of crack cocaine in appellant's shoes.[13]  Soon after the arrest, Trant spoke with appellant near the scene and seized the narcotics.[14]

*The reversal is based on a mistake in the record*

The testimony of Trant and Kunkel is consistent except for a single exchange in the midst of Trant's direct examination.  Trant said that he did not observe the detention or arrest but, based on what Kunkel and Betancourt told him "description-

---

[7]  3 RR 13, 39 (vehicle arrived and left within five to ten minutes).

[8]  3 RR 42-44.

[9]  3 RR 15-16.

[10]  3 RR 16, 59-60, 74.

[11]  3 RR 59-60, 74.

[12]  3 RR 61.

[13]  3 RR 67.

[14]  3 RR 12, 16-17, 68.

wise," "It *wasn't* the same vehicle."[15]  It was this response, according to the court of appeals, that created a disputed fact issue because the only valid basis for the stop was Trant's request and vehicle description.  It appears that this crucial testimony was transcribed in error.  The court reporter who prepared the record has confirmed that Trant's testimony was, "It was the same vehicle."  Her affidavit is included in the appendix.  Because of the lateness of this discovery, the proper remedy is to remand the case to the court of appeals so that it may submit the issue to the trial court for resolution.[16]

*Appellant was not entitled on the current record*

To be entitled to an article 38.23 instruction, three predicates must be met: (1) the evidence heard by the jury must raise an issue of fact, (2) the evidence on that fact must be affirmatively contested, and (3) the contested factual issue must be material to the lawfulness of the challenged conduct.[17]  A fact is "material" when it is "necessarily determinative of the admissibility of the challenged evidence."[18] Assuming the record remains unchanged, the fact that the wrong vehicle was detained

---

[15]  3 RR 16-17 (emphasis added).

[16]  Tᴇx. R. Aᴘᴘ. P. 34.6(e)(3) ("If the dispute arises after the reporter's record has been filed in the appellate court, that court may submit the dispute to the trial court for resolution.  The trial court must then proceed as under subparagraph (e)(2)[,]" which requires the trial court to settle the dispute).

[17]  *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012).

[18]  40 GEORGE E. DIX & ROBERT O. DAWSON, CRIMINAL PRACTICE AND PROCEDURE § 4.194, at 284 (2d ed. 2001).

5

is not, on its own, necessarily determinative of admissibility.

The proper inquiry is into the reasonableness of an officer's belief of the existence of a fact, not its existence *vel non*.[19] Just as the Fourth Amendment is not violated when officers mistakenly arrest an individual matching the suspect's description,[20] it might not have been unreasonable for Kunkel and Betancourt to stop a green Chevrolet S-10 or Mazda B2000—both similarly sized to a Ford Ranger—or a teal Ford Ranger. But Trant said only that the vehicle was not the same "description-wise" based on what he said he was told; he was never asked to clarify what "description-wise" meant. Without some testimony, for example, that Kunkel and Betancourt pulled over a red Ford Ranger, or a green Volkswagen Beetle, there was no way for a jury to determine whether their belief that they pulled over the correct vehicle was reasonable. On this record, there was no article 38.23 instruction that would have been necessarily determinative of the lawfulness of the stop.

---

[19] *Madden v. State*, 242 S.W.3d 504, 516 (Tex. Crim. App. 2007) ("But this is not a dispute about the historical facts, nor is it a dispute about whether the videotape shows some of the facts about which Trooper Lily testified. The real factual issue is whether Trooper Lily reasonably believed that appellant was acting in a nervous manner, not whether the videotape shows appellant acting in a nervous manner."); *id*. at n.31 (citing DIX & DAWSON, § 4.198 at 90-91 (Supp. 2007)) ("As Professors Dix and Dawson have noted, courts do not always focus on the precise factual issue that should be submitted to the jury. The factual issue is not "Did appellant's face tremble and his hands shake in nervousness?" It is, "Did Trooper Lily reasonably believe that appellant's face trembled and his hands shook in nervousness?").

[20] *Hill v. California*, 401 U.S. 797, 802-05 (1971).

*No complaint was preserved*

Assuming there was a disputed issue of material fact fit for a jury instruction, the court of appeals chose the wrong standard of harm.[21] "The first requirement for obtaining a jury instruction under Article 38.23, is that the defendant requests an instruction on a specific historical fact or facts."[22] Appellant failed to do this; his two requests for the instruction were devoid of facts. Although the disputed fact issue might be apparent in a given case, appellant showed this is not such a case when he raised two fact issues on appeal: whether the vehicles were different, and "whether Trant could have seen the failure to signal as he claimed."[23] Because only the latter issue was pursued in any form at trial, the trial court could not have known that appellant's nondescript article 38.23 request referred to the former. Appellant should not benefit from the less-stringent "some harm" standard when he identified no issue at trial, raised two alternatives on appeal, and his trial examination pointed only to the one not addressed by the court of appeals.[24]

---

[21]  *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (r'hrg) (defining different standards based on preservation).

[22]  *Madden*, 242 S.W.3d at 511.

[23]  App. Br. at 11. Nor does his boilerplate motion to suppress point towards any anticipated fact issue. 1 CR 39-40.

[24]  *See Holmes v. State*, 248 S.W.3d 194, 202 n.32 (Tex. Crim. App. 2008) ("Appellant's proffered instruction was incorrect because it was an abstract instruction on the law and did not specify any disputed fact issues; therefore any error should have been analyzed under *Almanza*'s egregious harm standard.").

7

*Harmless under any standard following proper review*

Regardless, there is no possibility of even "some" actual harm. "Harm does not emanate from the mere failure to include the requested instruction."[25] Even the "some harm" standard "still requires the reviewing court to find that the defendant suffered some actual, rather than merely theoretical, harm from the error."[26] A reviewing court is required to consider: (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors present in the record.[27] The court of appeals conducted no such analysis. Instead, like other courts of appeals, it concluded that the absence of an instruction that could have led to disregarding the drug evidence in a drug case was inherently harmful.[28]

Review of all the evidence shows why finding this type of error harmful *per se* is a mistake. The legality of the stop was a hotly contested issue for every reason *but* the "fact" that Kunkel and Betancourt pulled over the wrong vehicle. Defense

---

[25] *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013).

[26] *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (internal quotations omitted).

[27] *Id.*

[28] Slip op. at 13; *see, e.g.*, *Mills v. State*, 296 S.W.3d 843, 849 (Tex. App.–Austin 2009, pet. ref'd) ("As these were the sole facts here that could support reasonable suspicion for the traffic stop, the jury would then have been instructed to disregard all evidence obtained from the stop, including the cocaine that formed the basis for Mills's conviction. Thus, Mills suffered 'some harm' from the charge error."); *cf. Vrba v. State*, 69 S.W.3d 713, 719 (Tex. App.–Waco 2002, no pet.) ("The record contains no evidence of Vrba's guilt [of DWI] independent of that obtained as a result of the stop. Accordingly, we conclude that he suffered 'some harm' as a result of the omission of an article 38.23 instruction from the charge.").

counsel challenged Trant's view of the stop sign,[29] his lack of knowledge of what transpired at the duplex,[30] and the lack of reason to detain the truck prior to the signal violation.[31]  He also attacked Trant's decision not to include in his police report any reference to his undercover activity, and Kunkel's failure to supplement it.[32]  This theme carried through to closing argument.  "The least we can expect is they be honest with us in their reports, in what happened out on the streets, as they say it happened."[33]  "That goes against their honesty.  It goes against their credibility."[34]  "And once again, we've got nothing other than Officer Trant saying the vehicle failed to use a turn signal."[35]  "And Officer Trant was going to have your vehicle pulled over because of the location itself."[36]  "Even if the driver, even if the passenger say they did [use a turn signal], so what?  It's an officer's word against any one of us.  How do you refute that?  How?"[37]  "The way this case went down from the beginning,

---

[29]  3 RR 22-36 (including photos and maps).

[30]  3 RR 36-39.

[31]  3 RR 41-43, 74-75.

[32]  3 RR 45-49, 79-83.

[33]  4 RR 5.

[34]  4 RR 9.

[35]  4 RR 10.

[36]  4 RR 10.

[37]  4 RR 12.

ladies and gentlemen, was not right. It was not honesty."[38]

Considering the insinuation that Trant orders detentions without any regard for their lawfulness, and that Kunkel is complicit, one would assume that Trant's "admission" that Kunkel and Betancourt did not even pull over a vehicle matching the description would have been the "smoking gun." Not only did defense counsel not pounce on this statement, he apparently heard (or understood) it differently from the court reporter.[39] From his cross-examination of Trant:

Q: And you testified to the jury that the vehicle that was ultimately stopped drove by you; is that correct?

A. It did.[40]

Even if Trant's lone statement created a disputed fact issue, the remaining evidence shows it is undisputed that Trant saw appellant in the green Ford Ranger before it stopped at the duplex and that appellant was in the vehicle Kunkel and Betancourt detained at Trant's direction. It is also undisputed that Trant spoke to appellant after the arrest when he collected the narcotics obtained by Kunkel and Betancourt. That is not some bizarre coincidence. It is difficult to conceive how the jury could have given any weight to a single answer in light of the remaining

---

[38] 4 RR 13.

[39] Nor did the prosecutor acknowledge the implications of a negative answer during examination or refer to it during closing arguments.

[40] 3 RR 23.

cohesiveness of this short trial. When the record is viewed as a whole, "[i]t wasn't the same vehicle" looks more like a simple misstatement or typographical error than it does a genuinely disputed, material fact issue the jury could have possibly decided in appellant's favor.

## PRAYER FOR RELIEF

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals grant this Petition for Discretionary Review and remand the case so that the record dispute can be resolved. Alternatively, the State prays that the decision of the Court of Appeals be reversed on the merits as the record stands.

Respectfully submitted,
LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

P.O. Box 13046
Austin, Texas 78711
John.Messinger@SPA.Texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

11

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that according to the WordPerfect word count tool the applicable portion of this document contains 3,225 words.

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 1st day of June, 2015, the State's Petition for Discretionary Review was served electronically through the electronic filing manager or e-mail on the parties below.

Alan Curry
Chief, Appellate Division, Harris County District Attorney's Office
1201 Franklin, Suite 600
Houston, Texas 77002
CURRY_ALAN@dao.hctx.net

Sarah V. Wood
1201 Franklin Street, 13th Floor
Houston, Texas 77002
Sarah.Wood@pdo.hctx.net

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

**APPENDIX**

Opinion issued March 31, 2015



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00189-CR

————————————

**RUBEN TOTTEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Case No. 1365961**

## MEMORANDUM OPINION

Appellant Ruben Totten appeals his conviction for possession of cocaine. In a single issue, he complains about the court's denial of his request for a jury instruction. We reverse and remand for a new trial.

## BACKGROUND

At trial, Officer Trant with the Houston Police Department's narcotics unit testified about his involvement in appellant's arrest. On October 25, 2012, Trant was working undercover providing surveillance on a group of duplex units. This particular location was known for narcotics activity, and Trant had previously purchased drugs at that location.

Trant testified that he saw a green Ford Ranger drive past him and park in the duplex parking lot. Trant saw appellant (a white male) and another person (a black male) in the vehicle when it drove past him. While the vehicle was parked, the occupants raised the hood. One of the occupants spent some time inspecting the engine while the other occupant went inside a duplex for approximately five to ten minutes. Trant could not tell which occupant went into the duplex.

When the vehicle left the duplex, it drove west on Brownsville. Trant testified that he then saw the vehicle turn right onto Frankie Street without using a turn signal. Trant did not pull the vehicle over, however, because he was undercover in an unmarked car. Instead, he radioed two nearby uniformed officers, Officers Kunkel and Betancourt, to pull the vehicle over. Kunkel and Betancourt then pulled over a vehicle that appellant was in. Trant testified, however, that the vehicle Kunkel and Betancourt stopped was not actually the vehicle that he had seen turn without signaling.

Officer Kunkel testified about Trant notifying him about a green Ford Ranger that Trant believed had been involved in a narcotics transaction and that Trant had witnessed failing to signal a turn. Kunkel testified that he and his partner, Officer Betancourt, spotted the vehicle a few seconds after receiving a call from Trant. Kunkel and Betancourt began to follow the vehicle in their marked patrol car, and Kunkel noticed that the vehicle's rear taillight was cracked and emitting a white light. They initiated a traffic stop. Betancourt approached the driver's door and Kunkel approached the passenger's door. Kunkel provided in-court identification of appellant as the passenger.

Kunkel asked appellant if he had anything illegal on him. Appellant said that he had a switchblade knife. Kunkel asked appellant to get out of the car so that Kunkel could take possession of the switchblade knife in appellant's pocket. He then arrested appellant and searched appellant's person to ensure that he did not have any other weapons or drugs. That search revealed crack cocaine hidden in appellant's shoe. Those drugs were the basis of appellant's possession charge in this case.

After a chemist with the City of Houston Police Department Crime Lab testified that the substance Kunkel recovered from appellant's shoe was 1.2 grams of cocaine, the State and appellant rested. Appellant's counsel "ask[ed] for a 38.23

3

instruction," which the court denied. The following day, before closing arguments, appellant's counsel reurged this request, which was again denied.

The jury found appellant guilty and, after finding two enhancements for prior offenses to be true, assessed a sentence of 25 years' confinement. The court entered judgment on the jury's verdict, and appellant timely appealed.

## TEXAS CODE OF CRIM. PROC. art. 38.23

In his sole point of error, appellant argues that the "trial court committed reversible error by refusing to give a requested jury instruction under Article 38.23." That article provides:

> (a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005).

Noting that the "terms of the statute are mandatory," the Court of Criminal Appeals has held that "when an issue of fact is raised, a defendant has a statutory right to have the jury charged accordingly." *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). To demonstrate that he or she is entitled to an

instruction, the defendant must establish that the evidence raises an issue of fact, the evidence on that fact is affirmatively contested, and the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.* The evidence raising a fact issue "may be strong, weak, contradicted, unimpeached, or unbelievable." *Mendoza v. State*, 88 S.W.3d 236, 239 (Tex. Crim. App. 2002).

## A. Parties' arguments

Appellant argues that he was entitled to an article 38.23 instruction informing the jury that it must disregard the evidence about the drugs found on appellant if the jury believes, or has a reasonable doubt, about the legality of the traffic stop that led to his search and arrest. Specifically, he argues that the evidence raised a fact issue about whether Trant's allegedly witnessing a green Ford Ranger commit a traffic violation justified the traffic stop, given that Trant testified that the vehicle he observed making a turn without signaling was not the same vehicle Kunkel and Betancourt pulled over. Appellant also claims that photographic evidence of the scene raises a fact issue about whether Trant could have seen the vehicle turn without signaling. Finally, appellant asserts that Kunkel's testimony that the vehicle that appellant was riding in had a cracked taillight does not provide legal cause for the stop because a cracked taillight does

5

not constitute a traffic offense. *See Vicknair v. State*, 751 S.W.2d 180, 187–89 (Tex. Crim. App. 1986) (op. on reh'g).

The State does not respond directly to appellant's argument that the evidence raised a material fact question as to whether the failure to signal a turn and the later traffic stop involved the same vehicle. Instead, the State focuses on the issue of the cracked taillight. Specifically, the State argues that an article 38.23 instruction was not warranted, as there is "no dispute that Officer Kunkel received a report from Officer Trant that the Green Ranger carrying Appellant had failed to signal a right turn at the interaction." Thus, "even allowing for a factual dispute over the cracked taillight," the State asserts that the "dispute was not material" because "Officer Kunkel still had reasonable suspicion as a matter of law to conduct the traffic stop based upon the information he had at the time regardless of whether Officer Trant observed the cracked taillight or not."

## A.    Analysis

We agree with appellant that the evidence raised a fact issue warranting an article 38.23 instruction and that it was thus error for the trial court to refuse appellant's request. Officer Betancourt—who was driving the patrol car that pulled appellant over—did not testify at appellant's trial. Officer Kunkel, Betancourt's partner, testified that Trant called them early in the afternoon on October 25, 2012 to let them know that he was doing undercover narcotics

6

surveillance in the area and might need them to "be in the area" and "help with an investigation."

Kunkel testified that Trant contacted them again about 5:00 p.m. that day with information about a vehicle to pull over:

> Q. What type of information did you learn from Officer Trant?
>
> A. He advised us that he was watching a possible narcotics location and that he observed what he believed to be a narcotics transaction, and he gave us a vehicle description and a suspect description of the parties involved and we were close enough to find the vehicle that he saw involved in the narcotics transaction.
>
> Q. Did he give you any other information?
>
> A. On top of the description, he gave us probable cause to stop the vehicle. He observed it turn without using its signals, which is a traffic violation.
>
> Q. Do you remember the vehicle description that you received?
>
> A. Green Ford Ranger.
>
> Q. Did you receive a license plate so that you could locate that vehicle?
>
> A. I don't remember. Probably not.
>
> Q. Were you able to locate that vehicle?
>
> A. Yes.
>
> Q. How soon after were you able to locate it?
>
> A. A few seconds. He told us what direction of travel it was going, on what street. And we were close enough to find it on that street as well.
>
> Q. Did you immediately pull the vehicle over just based on that?
>
> A. No. We pulled up behind the vehicle and also observed that the tail lens was cracked and emitting a white light.

Q.    Is that a traffic violation?

A.    Yes.  That is a traffic violation as well.

Q.    What did you do at that point?

A.    We initiated a traffic stop. . . .

In his testimony, Officer Trant conceded that although he thought that the green Ford Ranger's short visit at this particular duplex complex was suspicious because of prior drug activity in the complex, there was no legal justification for detaining the vehicle nor its occupants until he witnessed the driver turn without signaling.  And he further testified that he is not sure if the appellant was in the car that he saw turn without signaling (because the occupants were a "blur") and that Kunkel and Betancourt did *not* pull over the vehicle that he had seen turn without signaling:

Q.    Do you remember what information you gave to Officer Kunkel and Officer Betancourt?

A.    Well, they knew when it began [because] I always brief people.  I let them see me, which they knew me from the past and I told them I was going to a location that we've been to several times.  And I was going to basically conduct surveillance and look for narcotics activity.

Q.    Did you give a description of the vehicle you had seen?

A.    I did.

Q.    Did you see them actually pull the vehicle over?

A.    No, ma'am.  I stayed where I was at.

Q.    Did you ever see that vehicle again once they had pulled it over?

A.    No, ma'am.  No.

8

Q. Do you know if the person they pulled over is the same person that you saw?

A. When they went by – I mean, I could just see two occupants. It was kind of a blur –

Q. Did you notice if it was the same vehicle that they –

A. It wasn't the same vehicle.

Q. And how do you know that?

A. Just by what they told me, description-wise.

The State argues that there was no fact issue for the jury to resolve about the legality of the stop warranting an article 38.23 instruction. It analogizes this case to the facts presented in *Broussard v. State*, 434 S.W.3d 828, 834–35 (Tex. App.— Houston [14th Dist.] 2014, pet. ref'd). In that case, officers testified that they approached and detained the occupants of a parked vehicle because the officers smelled marijuana emanating from the vehicle and saw the defendant smoking a cigar in the vehicle. *Id*. at 833. Tests on a cigar recovered from inside the car revealed that it contained Kush, a legal substance, rather than marijuana. *Id*. The defendant argued that he was thus entitled to an article 38.23 instruction because he raised "a fact issue regarding whether the police officers smelled marijuana." *Id*. The court disagreed, explaining that "[e]ven if the cigar recovered from the car did not smell like marijuana" that does not amount to affirmative evidence that "officers did *not* smell marijuana emanating from the vehicle." *Id*. at 834 (emphasis added). The marijuana smell "may have resulted from the recent use of marijuana rather than from the appellant's smoking marijuana when the officers

9

saw him smoking inside his vehicle." *Id.* at 835. Because there was no affirmative evidence that the officers did not smell marijuana emanating from the car, the evidence did not raise a fact issue supporting an article 38.23 instruction. *Id.*

The State also cites *Tollett v. State*, a case in which one officer saw the defendant driving erratically, but a different officer (who did not witness the erratic driving) detained the defendant. 422 S.W.3d 886, 897 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). In rejecting defendant's argument that the evidence raised a fact issue to support an article 38.23 instruction, the court noted that the absence of evidence is not the same thing as affirmative evidence. *Id.* ("We conclude Officer Sharp's testimony that he did not observe appellant commit any traffic violations is not *affirmative* evidence that Officer Hernandez lied about appellant committing traffic violations prior to the time Officer Sharp arrived.").

In *Madden v. State*, the Court of Criminal Appeals provided the following explanation about the type of conflicting affirmative evidence requiring an article 38.23 jury instruction:

> To raise a disputed fact issue warranting an Article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into question. In this context, a cross-examiner's questions do not create a conflict in the evidence, although the witnesses's answers to those questions might.
>
> Here, for example, one issue was whether appellant exceeded the speed limit of 55 m.p.h. through a construction site, giving Officer Lily a reasonable suspicion to stop him. If Officer Lily testifies that appellant did speed and Witness Two (or appellant) testifies that he

did not speed, this disputed factual issue must be submitted to the jury. If the jury finds that appellant did obey the speed limit and that Officer Lily was unreasonable in believing that he did not, then they may not consider the evidence obtained as a result of this unlawful detention. If, however, Officer Lily says that appellant did speed, and Witness Two (or appellant) says that he doesn't remember or doesn't know, there is no disputed fact to submit because there is no affirmative evidence of a factual conflict. Similarly, if Officer Lily testifies that appellant did speed, but the cross-examiner grills him, "Isn't it true that he really did obey the speed limit, you're wrong or you're lying?" there is no factual dispute unless Officer Lily admits, "Yes, that is true." The cross-examiner cannot create a factual dispute for purposes of an Article 38.23(a) instruction merely by his questions. It is only the answers that are evidence and may create a dispute. Even the most vigorous cross-examination implying that Officer Lily is the Cretan Liar does not raise a disputed issue. There must be some affirmative evidence of "did not speed" in the record before there is a disputed fact issue. Because there was such evidence in this record, the trial judge properly gave a jury instruction on this disputed fact.

242 S.W.3d 504, 513–14 (Tex. Crim. App. 2007) (footnotes omitted).

The evidence here is more like the evidence discussed above in *Madden* than in *Broussard* or *Tollett*. In this case, there is affirmative evidence creating a fact issue about the legal justification for Kunkel and Betancourt's stop of the vehicle appellant was riding in. Specifically, while the State argues that Trant's witnessing the green Ford Ranger turn without signaling provided the probable cause for the traffic stop, there is also affirmative evidence that Kunkel and Betancourt pulled over a different vehicle. It may well be that the jury would resolve this dispute in the State's favor, but submission to the jury is mandatory when a fact issue—compelling or not—is raised by affirmative evidence. *Mendoza*, 88 S.W.3d at 239

11

(article 38.23 submission is mandatory without regard for whether the evidence is "strong, weak, contradicted, unimpeached, or unbelievable").

The State points out that, "if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not material to the ultimate admissibility of the evidence and is not to be submitted to the jury." *See Mbugua v. State*, 312 S.W.3d 657, 669 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). But the State does not actually argue that the green Ford Ranger's short visit to the duplex or the cracked tail light provided legal justification for the stop.[1] The factual dispute about whether the vehicle that committed the traffic violation was the same one that was pulled over goes to the only legal justification proffered by the State for appellant's detention leading to his arrest for possession.

Because error was preserved in the trial court, appellant must only show "some harm" from the trial court's refusing his request for an article 38.23 instruction. *Mills v. State*, 296 S.W.3d 843, 849 (Tex. App.—Austin 2009, pet. ref'd) (citing *Almanza v. State*, 686 S.W.3d 157, 171 (Tex. Crim. App. 1985)).

---

[1] This is likely because Trant acknowledged that he did not witness any activity at the duplex complex justifying a stop. And a cracked taillight emitting a white light is only an infraction justifying a stop if it is completely broken out such that it does not also emit a red light. *Compare Vicknair*, 751 S.W.2d at 187–89 (op. on reh'g) (cracked taillight emitting sliver of white light did not justify traffic stop), *with Howard v. State*, 888 S.W.2d 166, 172–73 & n.6 (Tex. App.—Waco 1994, pet. ref'd) (completely busted out taillight that emitted only a white light, and no red light, justified traffic stop because it violated statute requiring automotive taillights to emit a red light).

Because appellant raised a fact issue about the legality of Kenkel and Betancourt's stop, and because the narcotics seized in that stop formed the basis of appellant's conviction, appellant suffered "some harm" from the charge error. *See, e.g., Vrba v. State*, 69 S.W.3d 713, 719 (Tex. App.—Waco 2002, no pet.) (appellant suffered some harm from the erroneous omission of an article 38.23 instruction because "record contains no evidence of [appellant's] guilt independent of that obtained as a result of the stop").

We sustain appellant's point of error.

## CONCLUSION

We reverse and remand for a new trial.

> Sherry Radack
> Chief Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).

CAUSE NO. 1365961

COURT OF APPEALS NO. 01-14-00189-CR



RECEIVED
MAY 15 2015
STATE PROSECUTING ATTORNEY

RUBEN TOTTEN

VS.

THE STATE OF TEXAS

IN THE 228TH DISTRICT COURT

OF

HARRIS COUNTY, T E X A S

AFFIDAVIT

I, Julia E. Johnson, deputy court reporter for the 228th District Court, am making a correction to the Official Reporter's Record in the above styled and numbered cause.

During the jury trial, on February 24, 2014, in Volume # 3 of 5, Page No. 17, lines 7 through 9, on Direct Examination of Harold Trant by Assistant District Attorney, Lauren Clemons, the record currently reflects the following:

"Q      Did you notice if it was the same vehicle that they --

A      It wasn't the same vehicle."

After listening to the audio, I have confirmed that I made an error in transcribing the answer, and it should be corrected to state:

"A      It was the same vehicle."

Sworn to by _SALLY M PANKHURST_ , Notary Public, on this 12th day of May, 2015.

Julia E. Johnson

Julia E. Johnson, CSR #3170

SALLY M PANKHURST
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
FEB. 7, 2017